53 LRA569n
3 LRA 205n

## PEOPLE v. SILBERWOOD.

1. RIPARIAN RIGHTS—GREAT LAKES.

    The fee of the soil lying beneath the waters of the Great Lakes is in the State, and the right of the riparian owner is limited to the enjoyment of such easements as were at common law incident to the ownership of land bordering upon navigable streams.[1]

2. SAME—CONSTITUTIONAL LAW.

    Therefore, Act No. 112, Pub. Acts 1895, setting aside certain submerged lands in Lake Erie for public shooting grounds, and making it unlawful to destroy the rushes and other submarine vegetation on such lands, is not unconstitutional in that it deprives the riparian owner of property rights without due notice and compensation.

Exceptions before judgment from Monroe; Kinne, J. Submitted May 1, 1896.    Decided July 8, 1896.

Obed Silberwood was convicted of destroying rushes upon public shooting grounds.    Affirmed.

| 110 | 103 |
| 113 | 228 |

| 110 | 103 |
| 116 | 232 |
| f116 | 239 |

| 110 | 103 |
| 127 | 391 |
| 127 | 590 |

| 110 | 103 |
| 150 | 1150 |
| 150 | 1151 |
| 150 | 1152 |

| 110 | 103 |
| 154 | 1136 |

---

[1] The ownership of the bed of lakes and ponds is the subject of a note in which the authorities on the question are collected in *Gouverneur* v. *National Ice Co.*, (N. Y.) 18 L. R. A. 695.

*George M. Landon*, for appellant.

*Fred A. Maynard*, Attorney General, and *Willis Baldwin, pro* Prosecuting Attorney, for the people.

MOORE, J. This is an action to test the validity of Act No. 112, Pub. Acts 1895, which was intended to set aside certain submerged lands in Lake Erie and Detroit river, lying east of and adjacent to the surveyed lands in Monroe and Wayne counties, for a distance extending one mile into Lake Erie, for public shooting grounds, to make it unlawful to cut and destroy the rushes and other submarine vegetation on such submerged lands, and to provide a penalty therefor, which act provided that such reservation or dedication should not interfere with or detract from any right or privilege of any person or the public to fishing, and that such waters should be free for purposes of navigation, provided, also, that said lands were owned by the State. Respondent was arrested in September, 1895, for cutting rushes on submerged lands adjacent to the property of the Monroe Marsh Company. He admitted these rushes were cut, not for the purposes of navigation, or of fishing, or in the enjoyment of fishing privileges. Respondent was working by direction of one Sterling, trustee of the marsh company.

The case of the people is based upon the following contentions: That the State is the owner of the fee of the land beneath the waters of the Great Lakes; that the vested right of the riparian owner on the Great Lakes is that of ingress and egress, by navigation, to and from his premises, with the right of wharfage, etc.; that a dedication of a portion of the Great Lakes as a public hunting ground (subject, always, to the rights of navigation) is a valid dedication. The respondent contends that Mr. Sterling, as trustee of the marsh company, has valuable rights of property in the water, and the lands thereunder, in front of his lands; that, as riparian owner, he is entitled to any and every use he can make of

the land under the water, and next to his surveyed lands, not inconsistent with the public right of navigation; that the right of fishing is a right of property, and not a privilege, and that this right of property cannot be summarily taken from him; that he had the right to cut the rushes to protect his shore or his fishing interests, or to prevent the flight of wild ducks being diverted from his marsh lands, or for any reason satisfactory to himself in the lawful enjoyment of his property; that the State owned none of these surveyed lands, and that the marsh company is the owner of the portion of the land under the water to the center of Lake Erie; that the act in question, arbitrarily, without notice or compensation, seeks to deprive him of the enjoyment of his property rights, and is therefore unconstitutional and void. The case comes here on exceptions before judgment.

The respondent insists that the owners of land lying adjacent to Lake Erie, in the county of Monroe, as such riparian proprietors, own the land to the center of that Great Lake, subject to the rights of navigation. If he is right in this contention, he was improperly convicted; otherwise, his conviction should stand. In support of his view of the law he cites a great many Michigan cases, and especially *Richardson* v. *Prentiss*, 48 Mich. 88; *Harrington* v. *City of Port Huron*, 86 Mich. 46; *Blodgett & Davis Lumber Co.* v. *Peters*, 87 Mich. 498 (24 Am. St. Rep. 175). At the common law, all tide waters were navigable, and nontidal waters were nonnavigable. The right to fish in navigable waters was public, but in nonnavigable waters it was private; the right depending, not upon the ownership of the shore, but upon the ownership of the soil under the water. *Lincoln* v. *Davis*, 53 Mich. 375 (51 Am. Rep. 116). The English common law made the ebb and flow of the tide the legal test of its navigability, for it was in fact the practical test. The conditions in this country, however, are very different. We have hundreds of miles of great rivers, and vast inland seas, wholly uninfluenced

by the tides, upon which float vast fleets of vessels; so that the common-law doctrine in relation to tide waters is not accepted in this country, because not applicable to our circumstances. One of the earliest decisions in this State in which the principles involved in this case are discussed is *La Plaisance Bay Harbor Co.* v. *Council of City of Monroe,* Walk. Ch. 155. In that case the court held:

"The bed of the stream is public property, and belongs to the State. This is the case with all meandered streams, no part of them being included in the original survey; and the common-law doctrine of *usque ad filum aquæ* is not applicable to them. The public owns the bed of this class of rivers, and is not limited in its right to an easement or right of way only. So, with regard to our Great Lakes, or such parts of them as lie within the limits of the State; the proprietor of the adjacent shore has no property whatever in the land covered by the water of the lake."

It is claimed by counsel for respondent that this decision has been overruled by later decisions of this court. It is conceded that, so far as the decision relates to the rights of shore owners on rivers and inland lakes, it is not now the law in Michigan (*Lorman* v. *Benson,* 8 Mich. 18 [77 Am. Dec. 435]; *Clute* v. *Fisher,* 65 Mich. 48; *Butler* v. *Railroad Co.,* 85 Mich. 246 [24 Am. St. Rep. 84]); but it is insisted that it is still the law so far as the Great Lakes are concerned. An examination of all the cases decided by this court which have been called to our attention fails to disclose that the question of the title to the bed of the Great Lakes was directly at issue in any of them. There is language used in some of the cases that would tend to support the claim of the respondent that the shore owner upon the Great Lakes has the same right to the land (subject to the right of fishing and navigation) which is possessed by the shore owner on rivers. *Lincoln* v. *Davis,* and *Blodgett & Davis Lumber Co.* v. *Peters, supra.* On the other hand, there are expressions used in other cases tending to show that, so far as

the Great Lakes are concerned, the law is as stated in the *La Plaisance Case. Sterling* v. *Jackson*, 69 Mich. 488 (13 Am. St. Rep. 405).

Other States having like interests to our own State in the waters of these great inland seas have had the precise question involved here before them, and have passed upon it. In *Diedrich* v. *Railway Co.*, 42 Wis. 248 (24 Am. Rep. 399), it was held that the vested right of the riparian owner on the Great Lakes is that of navigation to and from his premises, with the right of wharfage. The decisions in New York (*Champlain, etc., R. Co.* v. *Valentine*, 19 Barb. 484), in Pennsylvania (*Fulmer* v. *Williams*, 122 Pa. St. 191), and in Ohio (*Sloan* v. *Biemiller*, 34 Ohio St. 492), all hold that the fee of the riparian owner ceases at the low-water mark.

In the case of *Illinois Cent. R. Co.* v. *Illinois*, 146 U. S. 387, Judge Field, in delivering a very learned and exhaustive opinion, stated the law to be—

"It is the settled law of this country that the ownership of and dominion and sovereignty over lands covered by tide waters within the limits of the several States belong to the respective States within which they are found, with the consequent right to use or dispose of any portion thereof when that can be done without substantial impairment of the interest of the public in the waters, and subject always to the paramount right of Congress to control their navigation so far as may be necessary for the regulation of commerce with foreign nations and among the States. * * * The same doctrine is in this country held to be applicable to lands covered by fresh water in the Great Lakes, over which is conducted an extended commerce with different States and foreign nations. These lakes possess all the general characteristics of open seas, except in the freshness of their waters, and in the absence of the ebb and flow of the tide. In other respects they are inland seas, and there is no reason or principle for the assertion of dominion and sovereignty over and ownership by the State of lands covered by tide waters that is not equally applicable to its ownership of and dominion and sovereignty over lands covered by the fresh waters of these lakes. * * * The

Great Lakes are not in any appreciable respect affected by the tide, and yet on their waters a large commerce is carried on, exceeding in many instances the entire commerce of the States on the borders of the sea. When the reason of the limitation of admiralty jurisdiction in England was found inapplicable to the condition of navigable waters in this country, the limitation and all its incidents were discarded. So, also, by the common law, the doctrine of the dominion over and ownership by the crown of lands within the realm under tide waters is not founded upon the existence of the tide over the lands, but upon the fact that the waters are navigable, 'tide waters' and 'navigable waters' being used as synonymous terms in England. The public being interested in the use of such waters, the possession by private individuals of lands under them could not be permitted except by license of the crown, which could alone exercise such dominion over these waters as would insure freedom in their use so far as consistent with the public interest. The doctrine is founded upon the necessity of preserving to the public the use of navigable waters from private interruption and encroachment,—a reason as applicable to navigable fresh waters as to waters moved by the tide. We hold, therefore, that the same doctrine as to the dominion and sovereignty over and ownership of lands under the navigable waters of the Great Lakes applies which obtains at the common law as to the dominion and sovereignty over and ownership of lands under tide waters on the borders of the sea, and that the lands are held by the same right in the one case as in the other, and subject to the same trusts and limitations."

It seems to me the reasoning of this case is without flaw, and that the law enunciated therein ought to stand as the law of this State. It commends itself to one's reason and judgment, and avoids many difficulties incident to a different construction of the law. It is in harmony with the doctrine laid down in the early case of *La Plaisance Bay Harbor Co.* v. *Council of City of Monroe,* which I do not think has ever been overruled in this State so far as it affects the rights of shore owners on the borders of the Great Lakes. This doctrine, too, is in harmony with the decisions in all of the States bordering

on these great seas. It logically follows that, if this view is to be regarded as the law, the legislature possessed authority to pass Act No.' 112 of the Public Acts of 1895.

The conviction is affirmed.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred. LONG, C. J., did not sit.