## GILMAN *v.* GILMAN.

DEEDS—DELIVERY—EVIDENCE—SUFFICIENCY.

On a bill to remove a cloud from the title to certain lands consisting of a deed which complainant executed in favor of defendant, his daughter, but claims he never delivered, evidence examined, and *held,* to show delivery.

Appeal from Wayne; Rohnert, J.   Submitted January 4, 1906.   (Docket No. 11.)   Decided March 5, 1906.

Bill by Baxter H. Gilman against Grace G. Gilman to remove a cloud from the title to certain land.   From a decree for complainant, defendant appeals.   Reversed, and bill dismissed.

*O. E. Angstman,* for complainant.

*Manchester & Prentis,* for defendant.

MONTGOMERY, J.   Complainant filed this bill to remove a cloud from the title to a house and lot occupied by him as a homestead.   From a decree granting the relief prayed the defendant appeals.

The parties are father and daughter.   On the 11th day of October, 1897, complainant executed a deed of the property in dispute to defendant, which deed contained the following clause, viz. :

" This deed is given and accepted subject to the life, use, and enjoyment of the same by the grantor without rent or other expense thereof."

The deed was retained in complainant's possession until January 24, 1898, when it was recorded.   It was afterwards returned to his possession from the office of the register of deeds, and was produced by complainant on the hearing.   In November, 1898, a rider was caused to be

placed upon an insurance policy then held by complainant, reading as follows:

"It is understood that the title to the within-described property is in the name of Grace G. Gilman, his daughter, but that the said B. H. Gilman has a life lease of the property."

Again on the 13th of March, 1900, a new policy was taken out with the following rider:

"It is understood that the title to the within-described property is in the name of Grace G. Gilman, daughter of the insured, and that B. H. Gilman has a life lease to the property. The deed is given and accepted subject to the life, use, and enjoyment of the same by the grantor, without rent or other expense thereof."

At the time this deed was executed complainant was a widower, and his daughter was a student at Vassar. In 1899 complainant remarried, and not long thereafter the relations between father and daughter became strained. The testimony shows that up to the time of the second marriage the relations between the parties were of the most friendly. There was also testimony from other witnesses that complainant, before he executed the deed, stated that he contemplated remarrying and intended to deed the homestead to Grace.

We have been thus particular in giving the setting to the main facts as in our judgment much light is thrown upon the main question. That question is whether there was a delivery of this deed with intent to pass title. Upon this question the two parties are opposed in their testimony. The circuit judge determined the case, not upon the ground that one was entitled to more faith than the other, but upon the ground that the circumstances appeared to him to corroborate the view of complainant. Stress was laid upon two facts; that defendant "had carried out none of the duties imposed upon her by the deed," and that the deed remained in complainant's possession. We cannot escape the conclusion that too much weight

was attached to these circumstances by the learned circuit judge.

When the relationship of the parties is taken into account, and also the fact that at the first the father knew his daughter to be without means (although she came into some property later) and was paying her expenses in college, it was not at all remarkable that she did not understand that she was expected to pay the taxes. As to the retention of the deed by complainant, this is explained by defendant's testimony that it was left with him for safe-keeping. In the summer of 1898, when the daughter was home on vacation, a conversation occurred between the two as to this deed. The daughter testifies that her father took the deed out of a tin box in his room, and handed it to her stating that he had deeded the property over to her; that she examined the deed, expressed her appreciation of the kindness, and then handed it back to her father to be replaced in the box; that she had had articles of her own in this same box—laces, and her bankbook. Complainant agrees that a conversation occurred about the deed in this same room where the safety box was kept, but denies that the deed was shown to defendant at all. He says:

"I told her I had fixed a deed in her favor so that if anything happened to me, the way I looked at it, I could turn it over."

In view of the facts that the deed had been previously recorded, and that he subsequently changed the insurance policies as above stated, and of the declaration in relation to his purpose to transfer this property in advance of his approaching remarriage, we are not impressed with the complainant's candor. The sole question in the case is whether there was a delivery with intent to pass title. We are convinced that there was.

The decree is reversed, and the bill dismissed, with costs of both courts to defendant.

BLAIR, OSTRANDER, HOOKER, and MOORE, JJ., concurred.