AINSWORTH *v.* MUNOSKONG HUNTING & FISHING CLUB.

1. BOUNDARIES — GREAT LAKES — REAL PROPERTY — RIPARIAN RIGHTS.

   Riparian owners along the Great Lakes own to the meander line, outside of which the title is in the State in trust for its citizens.

2. SAME—RIVERS AND LAKES—NAMES.

   The name by which a body of water is designated does not determine its character or its relation to the Great Lakes.

3. CONSTITUTIONAL LAW—TREATIES—COURTS OF STATES.

   Treaties between the United States and Canada, fixing the boundary lines between the countries, are the supreme law of the land, binding upon State courts.

4. SAME—TREATIES—ACTS OF CONGRESS.

   Acts of congress affecting the terms of treaties are not subject to the jurisdiction of the courts but relate to the political department of government.

5. SAME—STATUTES—EFFECT OF CONGRESSIONAL ACTS.

   An act of congress (29 U. S. Stat. 54), for the regulation of anchorage in St. Mary's river, will not be held to effect a change by implication in the relation of Munoskong Bay to Lake Huron by making it a part of St. Mary's river, notwithstanding the terms of the statute affect the bay and include it within the regulations.

6. BOUNDARIES—GREAT LAKES—BAYS—RIVERS.

   A bay about six miles in length and breadth, known as Munoskong Bay, connected with Mud Lake, from the head of which to Lake Huron is a distance of 24 miles, navigable and practically level with Lake Huron, and having a similar current, is a part of it and not of St. Mary's river; the riparian owners having title to the meander line of the bay.

Appeal from Chippewa; Steere, J. Submitted October 13, 1909. (Docket No. 76.) Decided December 10, 1909.

Bill by Corydon E. Ainsworth and Frank Trempe against the Munoskong Hunting & Fishing Club to en-

join the interference with hunting wild fowl on navigable waters. From a decree for complainants, defendant appeals. Affirmed.

*E. S. B. Sutton*, for complainants.

*Sharpe & Handy* (*John H. Goff*, of counsel), for defendant.

A complete statement of the averments in the bill of complaint is found in 153 Mich. 185 (116 N. W. 992, 17 L. R. A. [N. S.] .1236, 126 Am. St. Rep. 474), when the case was before us upon demurrer, and the court below sustained the demurrer and dismissed the appeal. That decision was reversed, and the case remanded for answer by the defendant. The answer was duly filed, issue joined, proofs taken and decree rendered for complainants enjoining the defendant from interfering with the right of complainants to fish and hunt upon the water described in the bill of complaint. The answer denies that the subaqueous land of Munoskong Bay is held by the State of Michigan, and avers that the waters of said bay are a part

---

The following is the opinion referred to on page 71:

Is Munoskong Bay a part of the St. Mary's river, or of Lake Huron? Since the time of their discovery the varying characteristics of the connecting waters between Lake Superior and Lake Huron have led to more or less uncertainty and confusion in naming and classifying them. In the earliest accounts of them the Jesuit fathers, in their "Relations," describe those waters sometimes as a strait, and at other times as a river, and, following them, explorers, travelers, and experienced writers, as well as surveyors, geographers, and hydrographers have disagreed as to what those waters are and how they should be named and designated. Some insist that the entire stretch of water from Iroquois to Detour is a strait only; others, that it is a river the whole distance; others, that it is part strait and part river. Some consistently call it at all times a river, others a strait, and some speak of it interchangeably as a strait and a river. The testimony given in this case is also along somewhat conflicting lines. An examination of the charts and undisputed natural features of this waterway shows the reason of such confusion. Between Detour on Lake Huron and Point Iroquois on Lake Superior, we find, at different places, an endless diversity of

of the St. Mary's river, and the rights of defendant as riparian owner extend to the middle thread of that stream. The answer admits that the agents and servants of defendant interfered with the attempt of complainants to hunt as averred in the bill, but denies that such acts were done maliciously. The answer asserts ownership in defendant, and avers it has exclusive right to hunt and fish at the place named. The answer further avers that the defendant, has at great expense erected a clubhouse, purchased the land surrounding said bay, and has sown the bay with rice and other vegetables and grain suitable for the feeding of wild fowls; that it has prepared such waters as a game preserve, and owns the exclusive control over such waters and should be protected therein.

Munoskong Bay is connected with Mud Lake at its upper end. The dimensions of Munoskong Bay are not stated in the record. Applying the scale of miles found upon the map, we find it to be about 6 miles east and west and about 5¾ miles north and south. The defendant owns all the lands around this bay except a fraction of an acre. Two rivers enter into Munoskong Bay at its west side.

shores, shapes, sizes, and courses of water, with varying depth, width, and flow. · Kohl in his "Wandering Round Lake Superior" (page 302) thus well describes it:

"The outpour of water at the eastern end of the lake (Superior), called the St. Mary's river, is a combination of several variously formed waters. The river divides into several broad arms, which separate, unite, and then divide again. Repeatedly these arms collect in large pools, when they become calm, and then shoot in narrow passages from one lake to another, thus forming rapids."

Along this waterway, according to the point of observation, are found bays, straits, lakes, rivers, and rapids, well defined, and free from any doubt when considered individually. Conflicting property interests have brought the matter before our courts, from time to time, and it is now well settled that a part of these connecting waters constitute a river, giving to the shore owner all the riparian rights that name implies in Michigan. (Citing cases). It has also been held by our Supreme Court in *Sherwood* v. *Commissioner of State Land Office*, 113 Mich. 227 (71 N. W. 532), that the river does not extend to Detour Passage, and that Sweet's Island, lying above the passages, is in a part of Lake Huron. But

It is navigable, and has been navigated, for many years, by boats and tugs drawing from 4 to 10 feet of water. The water for a long distance from the shore is shallow, the home of fish and the resort of wild game.

GRANT, J. (*after stating the facts*). It is the established law of this State that riparian owners along the Great Lakes own only to the meander line, and that title outside this meander line, subject to the rights of navigation, is held in trust by the State for the use of its citizens. Among these is the common right to fish and hunt. *La Plaisance Bay Harbor Co.* v. *City of Monroe*, Walk. Ch. (Mich.) 155; *People* v. *Silberwood*, 110 Mich. 106 (67 N. W. 1087, 32 L. R. A. 694); *People* v. *Warner*, 116 Mich. 228 (74 N. W. 705); *State* v. *Shooting Club*, 127 Mich. 580 (87 N. W. 117); *Lincoln* v. *Davis*, 53 Mich. 375 (19 N. W. 103, 51 Am. Rep. 116). In these cases, and others cited therein, the subject has been fully discussed, and further discussion here would be unprofitable.

The sole question now before us is whether Munoskong Bay is included in the waters of Lake Huron or whether

the question of how near the two Great Lakes, Superior and Huron, approach each other, and where the St. Mary's river begins and ends, is yet undecided.

It seems to have become a custom, though not universal, not only among sailors and others who have occasion to refer to them, but also government officials, on their charts and in their official reports, to designate the various parts of these connecting waters by their specific names when referring to any particular place, as Detour Passage, Mud Lake, Hay Lake, Lake George, the East, West, and Middle Neebish, the Falls of St. Mary, Waiska Bay, etc., and to refer to all the sheltered and connecting waters between Detour and Point Iroquois, collectively, as the "St. Mary's river." This general use of the name "St. Mary's river," for the stretch of navigation referred to, does not serve to clear or settle the question before us. The essential thing to determine is what the specific water under consideration really is, not what it may be loosely or collectively called. Manifestly, the river, as such, in legal effect, does not reach either Detour or Point Iroquois. The widening waters at either end between these points are on the level of the

it borders on the river.   If the former, the defendant has no exclusive rights of hunting and fishing, and the decree of the court is right.   If the latter, then the defendant own the subaqueous land to the middle thread of the river, and the decree is wrong.   Cases involving the title of lands from the Rapids of Sault Ste. Marie to the foot of Neebish Rapids are not controlling; and, in fact, throw no light upon the character of the waters below the Neebish Rapids, and do not control the question now before us. Travelers, explorers, surveyors, and some decisions, where this precise question was not involved, sometimes refer to the waters as the "Straits," sometimes as the "River Sault Ste. Marie," and sometimes as the "Passage." The question cannot be determined by the names which these various parties have seen fit to apply to this body of water, but it must be determined by the character of the water itself, from the treaties with England and from the adjudicated cases upon the subject.

We said in *People* v. *Neal,* 143 Mich. 275 (106 N. W. 859):

"'The name cannot alter the thing.   It cannot be received as a proper definition of the character of the water.'"   *State* v. *Gilmanton,* 14 N. H. 477.

---

Great Lakes they connect with, and rise and fall with them, have irregular shores and a broad expanse of several miles, contain in places many islands, and are subject to storms and waves which render their navigation in small boats dangerous, and, at times impossible, and they present the general characteristic of the numerous inlets and bays connected with the Great Lakes.   The only suggested or possible difference between them and others is the increased movement of water over and through them in its passage from Lake Superior to Lake Huron.   Lake Michigan also empties into Lake Huron through the Straits of Mackinac.   The fact, standing alone, cannot be taken as a test for a river.   The fact that there is some current in a body of water is not, in itself, in every instance, sufficient to make it a river or a stream, nor will the swelling out of a stream into broad sheets of water always make it a lake or bay.   Through all lakes which have an outlet, and all bays into which streams enter, there is some current of water towards

In *United States* v. *Rodgers*, 150 U. S. 249, at page 261 (14 Sup. Ct., at page 114), the court said:

"The nomenclature, however, does not change the real character of either, nor should it affect our construction of terms properly applicable to the waters of either."

From the head of the Rapids of Sault Ste. Marie to the foot of the Neebish Rapids there is a fall of 20.75 feet, and there is a decided and, in some places, a very swift current, and consequently the riparian owners own the subaqueous lands to the middle thread of the river. Below the Neebish Rapids a different condition exists. At the foot of the Rapids the waters fall to the level of Lake Huron. Mud Lake is from 5 to 6 miles in width. Munoskong Bay is an arm of Mud Lake, and, as above shown, is navigable for boats drawing 10 feet of water. A glance at the map will show the extent of these waters below the Neebish Rapids and the many islands situated therein, including the west end of Georgian Bay and the entrance or passage at Detour to the main body of Lake Huron. The distance from the head of Mud Lake to Lake Huron is 24 miles. An engineer testified that during this distance the fall of water is very slight; "a fair estimate would probably be two-tenths of a foot." As-

the sea. If below an expanse in a stream it resumes its definite characteristics as a river, and continues on as such, the expanse is part of the river.

The report of Engineer Haskell on discharge measurements made in St. Mary's river in 1896, found in "Reports U. S. Lake Survey," 1897–1900, page 4092, is strongly urged in support of defendant's contention. In harmony with the usage of his department, Prof. Haskell calls all the connecting waters between Detour and Iroquois the "St. Mary's river," and gives its length as 62 miles. The entire fall or difference between the levels of Superior and Huron, he gives as 20.75 feet. He estimates the fall above the rapids at Sault Ste. Marie, as .41 of a foot. From the head of Mud Lake to Lake Huron (his given length of the river would put it at Detour) he gives as 24 miles, and "the fall but slight; a fair estimate would probably be .2 of a foot." He regards the current in such stretches as "almost inappreciable." While it is true that he calls Mud Lake, which includes the waters under consideration, a part of St.

suming this estimate to be correct, the fall would be one-tenth of an inch per mile, an almost imperceptible variation. The maps and surveys place all these waters upon a level with Lake Huron. Of course there is more or less of a current from the foot of Neebish Rapids to Detour. There is also more or less of a current through all the waters of the Great Lakes, from Lake Superior to the ocean. There is also a current through the straits of Mackinac, between Lake Huron and Lake Michigan, in which islands are located. Mr. Mondor, a witness for defendant, who had traversed these waters as a sailor for some 32 years, testified:

"The St. Mary's river in my opinion does not run to Detour, but stops at the Neebish."

And one Lanstra, master of a lighthouse tender and a witness for the defendant, testified:

"Mud Lake is on a level with Lake Huron, and they are on the levels mentioned in this chart as levels of Lake Huron."

This witness called these waters a river because they were so denominated on the chart. He said that if the islands were not there he would not call it a river. There are undoubtedly many currents through these islands, all tending towards the main body of Lake Huron just as the

Mary's river, his description of those waters does not seem to bear out the name, and in the use of the name he extends the river beyond a point where our Supreme Court has expressly declared to the contrary.

Other scientific men tell us the river loses its characteristics as such, and ends at the foot of the Neebish Rapids. Dr. Houghton, the eminent geologist, apparently coasting up and describing the east side, says:

"Commencing with the mainland at the first or lower point of contraction in the Montreal channel of the St. Mary river. * * * At that point in the Montreal channel before alluded to, the first perceptible current was noticed, and this may, therefore, in reality, be considered as the termination of this arm of Lake Huron, as well as the commencement of the St. Mary river." Michigan S. D. 1840, Vol. 2, pp. 72, 73.

Henry R. Schoolcraft, the eminent explorer, geologist, and In-

waters of Lake Huron tend to the south to the lakes below. The early explorer entering the Detour Passage, after sailing a few miles and finding a great expanse of water extending in both directions as far as the eye could reach, now known as Potagannissing Bay, had no occasion to suppose that he was in a river - or in any other water than a part of the Great Lake. So the navigator of today would have no more occasion to think he had left a lake and entered a river than he would have in passing some of the channels between the numerous islands along the shore. It is established beyond all controversy that the waters above Detour rise and fall as the great body of water south of it rises and falls.

It is not important here to state the provisions of the early treaties between the United States and Great Britain, Treaties of Paris 1782 and 1783, and the Treaty of Ghent in 1814. We think there is no question but that the two governments by these treaties considered the waters from Detour to the foot of Neebish Rapids as a part of Lake Huron, and made these treaties upon that understanding. These treaties, unless abrogated or changed by treaty or act of congress, became the supreme law of the land, and are binding upon the courts. Acts of congress, however, affecting the terms of such treaties are not subject to the

---

dian historian, who lived many years on the St. Mary's river, and in his writings often mentions it both as a strait and a river, says:

"The lake or strait may be supposed to cease, and the river to commence, at the foot of the first rapids, called Miscoutin or Neebish, as there is no perceptible current below it, where the strait assumes a great width, and is filled with innumerable islands." Narrative Journal of Travels, A. D. 1820, p. 128.

Col. McKinney in his "Tour of the Lakes," published in 1826, being a narrative of the second Cass expedition to the upper lakes, after describing the lower reaches between Detour Passage and St. Joseph's Island, says (page 172): "At two o'clock entered the mouth of St. Mary's; distant from Sault 21 miles "—which by the old channel through Lake George, then the only route navigable by large boats would be the East Neebish.

Mrs. Jameson, an extensive traveler and well-known writer, telling of a trip by canoe from Mackinaw to Sault Ste. Marie, in

jurisdiction of the courts; they belong to the political department of the government. *Whitney* v. *Robertson*, 124 U. S. 190–194 (8 Sup. Ct. 456); *Fong Yue Ting* v. *United States*, 149 U. S. 698–720 (13 Sup. Ct. 1016); *Thomas* v. *Gay*, 169 U. S. 264 (18 Sup. Ct. 340).

It is alleged by counsel for defendant that congress has established that the entire stretch of water from Point Iroquois to Point Detour constitutes a river, citing Act March 5, 1896, chap. 49, 29 U. S. Stat. 54 (U. S. Comp. Stat. 1901, p. 3551). That act is entitled, "An act relating to the anchorage and movements of vessels in St. Mary's river. For the purpose of regulating navigation by suitable rules and regulations it provides for "governing the movements and anchorage of vessels and rafts in St. Mary's river, from Point Iroquois, on Lake Superior, to Point Detour, on Lake Huron." It is not claimed that this act is at all in conflict with the treaty rights between the United States and Great Britain. It is claimed that this act takes all the waters on the American side of the boundary line out of the provisions of the treaty by which it was found to be a part of Lake Huron, and changed the character of this water from a lake into a river. The term "St. Mary's river" in this act was used undoubtedly by congress for convenience in designating the waters between the two points mentioned for the purposes of navi-

her book entitled "Winter Studies and Summer Rambles," published in 1839, after describing the entrance at Detour Passage and the journey up past the lower end of St. Joseph's Island, says:

"We could not land and light a fire till we reached the entrance of St. Mary's river between Neebish Island and the mainland."

In the case of *Sherwood* v. *Commissioner of State Land Office*, before mentioned, our Supreme Court, speaking of Sweet's Island, which is located near the mainland between Detour Passage and St. Joseph's Island, briefly but clearly disposes of the claim that it lies in St. Mary's river, as follows:

"We are of the opinion that this island is within the body of water known as Lake Huron."

From the brevity of this opinion it has been argued that the case may not have been as fully and carefully considered as some others.

gation. There is nothing in the title or body of the act to indicate any intention to change the northern boundary line of Lake Huron. There is nothing in it to indicate that it was directed against the treaties between the two governments, or that there was any intent to change the character of the water from a lake into a river. The law will not permit such an important change to be accomplished by implication.

Under the contention of the defendant the entire body of water from Point Detour to the Neebish Rapids is a river, and every owner of land along its tortuous shore owns to the middle thread of the stream and the islands lying between. This question, however, is determined against the defendant by *Sherwood* v. *Commissioner of State Land Office*, 113 Mich. 227 (71 N. W. 532). The relator in that case claimed to own Sweet's Island, located 600 feet from shore and about 7 miles above Point Detour, by virtue of his riparian ownership. It was distinctly held that the island lay within "the body of water known as Lake Huron," and was therefore within the rule of *People* v. *Silberwood, supra*.

The case of *People* v. *Silberwood* involved submerged lands lying in Lake Erie and Detroit river. *People* v. *Warner*, supra, involved islands on the shores of Saginaw Bay.

---

Just how thoroughly it was briefed, or how much time was spent in preparing the decision, we are not advised, but there is no uncertainty in the language used, and it is now the law. The reasons which must have governed the decision in that case apply with equal force to Mud Lake and Munoskong Bay, which is a part of it. It is but a continuation of those large waters at the north end of Lake Huron known as Georgian Bay and the North Channel. It is true that they are confined and sheltered on the east by St. Joseph's Island, a large island surrounded by deep water, capable of navigation with large vessels, and that the St. Mary's river flows into Mud Lake from the north. But it is in the basin of, and has the same water level as, Lake Huron, and rises and falls with it. If St. Mary's river were diverted elsewhere and eliminated from our consideration, and Lake Huron maintained its present level, Mud Lake, as a bay some 12 or 14 miles long, with a varied width of from 2 to 6 miles,

The presiding judge who heard this case in the court below has lived at Sault Ste. Marie for more than 30 years, and is familiar with the character of the water from the Falls of Sault Ste. Marie to Detour. The case is of such importance that we deem it well to print in the margin his opinion, omitting therefrom his statement of facts, the claims of the parties, and citations of authorities.

The decree is affirmed with costs.

BLAIR, C. J., and MOORE, McALVAY, and BROOKE, JJ., concurred.

---

would maintain its present level, size, condition, and general appearance, absolutely without change. The only exception is that there would be less current spread over, through, and running out of it. But current alone cannot make waters a river. Furthermore, the extent and regularity of the current relied upon is a matter in dispute. It is the testimony in this case, and a well-known fact, of which the court could almost take judicial notice, that ice forms earliest, thickest, and lasts the longest on Mud Lake and down past Point Au Frene, towards Lime Island. Navigation is often delayed latest there, at the opening of navigation, of any point on the Lakes. The great fleets starting for Lake Superior in the spring frequently are detained there by solid ice when the St. Mary's river above and the Great Lakes outside are clear. If it were a river, with a strong and constant current running through it, those conditions could not exist. The rise and fall of the water in Mud Lake and Munoskong Bay depend on the rise and fall of Lake Huron. This, with the relative position, size, and general features of that body of water, fixes its characteristics as that as an arm or bay of Lake Huron, subject to the rules of law governing the Great Lakes.