### ATTORNEY GENERAL v. JOY.

QUO WARRANTO—REHEARING—DELAY—MOTIONS.

A rehearing must be denied after a period of nearly 30 years have elapsed from the date of final determination of a quo warranto case, involving the right of the Detroit, Grand Haven & Milwaukee Railway Company to exercise its corporate franchise, when the motion was based principally on public records accessible in former proceedings, and the matters of evidence claimed to be newly discovered were not conclusive of the relator's contentions in the case.

Quo warranto proceedings by Jacob J. Van Riper, Attorney General, against James F. Joy and others

to determine the right of the respondents to exercise the corporate privileges and franchises of the Detroit, Grand Haven & Milwaukee Railway Company. On motion for rehearing. Submitted January 29, 1914. (Calendar No. 7,666.) Denied July 24, 1914.

*Roger I. Wykes,* for the motion.

*L. C. Stanley, contra.*

PER CURIAM. Primarily this is a petition for rehearing in the above-entitled cause, filed by Roger I. Wykes, attorney general, on December 30, 1912. It consists of a printed volume containing 192 pages. Petitioner also asks that, if for any reason a rehearing cannot be granted, permission be given to file an original bill of review to present the questions outlined in the petition.

This case, now sought to be opened, is a quo warranto proceeding and was decided nearly 30 years ago, in 1884, being reported in 55 Mich. 94 (20 N. W. 806), where it occupies 12 pages of the printed record. The opinion is written by Justice COOLEY, and he states that he treated the issues as purely legal questions. It involved the validity and interpretation of certain railroad legislation (including an act passed January 29, 1859 [Act No. 37, Laws 1859], to legalize certain loans made by the Detroit & Milwaukee Railway Company), under which the Detroit, Grand Haven & Milwaukee Railway Company now claims its corporate existence. This court then held, contrary to the contention of the attorney general, that certain legislation enabling the company to take a new name and extend its line did not create a new corporation, and defendants were not guilty of certain acts of usurpation charged against them in that connection.

An examination of the original record shows that the case was thoroughly litigated and able briefs were

filed by counsel on both sides. Attorney General Van Riper, assisted by Edward Bacon, represented the State, and G. V. N. Lothrop, E. W. Meddaugh, and George Jerome represented the respondents. It is undisputed that all attorneys then connected with the case and the justices who participated in the opinion are now deceased, as well as most, if not all, respondents.

Several attempts made in various ways and courts to enforce collection of certain specific taxes levied under subsequent legislation against the Detroit, Grand Haven & Milwaukee Railway have failed as being in disregard of the special charter under which it operated, the validity of said charter having been settled by the *Van Riper Case,* and therefore *res judicata. People, ex rel. Attorney General,* v. *Railway Co.,* 157 Mich. 144 (121 N. W. 814) ; *Powers* v. *Railway,* 201 U. S. 543 (26 Sup. Ct. 556).

Two cases are now pending in which it is sought to enforce collection of the specific tax from the Detroit, Grand Haven & Milwaukee Railway; one in the Federal court (*Detroit, etc., R. Co.* v. *Fuller* [D. C.], 205 Fed. 86), in which proceedings against the railway under Act No. 95, Pub. Acts 1911, were enjoined (which we are informed has been appealed), and one in the Kent county circuit court in chancery, in which a demurrer to the State's petition, which goes into these matters very exhaustively, was overruled and defendant given leave to answer, such ruling of the trial court having been sustained in this court (169 Mich. 72 [135 N. W. 87]). We understand this case has not yet been heard.

Relator here moves against the original source of embarrassment in all subsequent litigation and seeks to eliminate it by a reversal of this, so-called, Joy decision on a rehearing, the ground urged for granting a rehearing being newly discovered evidence, not available or known to relator when the case was heard

and since secured, mostly from the historical collections of C. M. Burton of Detroit, who, in his work of collecting historical material, came into possession of a large quantity of private papers, including many letters, formerly belonging to, or in the hands of, H. H. Emmons, for a long period attorney of the Detroit & Milwaukee Railway and the Detroit & Milwaukee Railroad Companies. It is claimed these and certain court records of Wayne county since discovered present the matter in an entirely different light, showing that respondents as stockholders and officials of the railway prepared and pushed the legislation in question and subsequently organized and operated the road under its provisions upon the theory and under the claim that it was a new corporation, independent and distinct from that which had previously existed, in direct conflict with their contention before the court in this case.

Discovery of most of the new information upon which petitioner relies was made in 1908, though it is claimed further search among court records and the Emmons papers has disclosed additional matters of importance since that time, and it is contended that had such evidence been presented to the court in the case at bar when originally heard and decided an entirely different result must have followed.

In the case of *People, ex rel. Attorney General,* v. *Railway Co.,* 157 Mich. 144 (121 N. W. 814), *supra,* the very elaborate record shows that much of the matter now sought to be presented to this court was there presented and urged, and argued pro and con at great length. It was there earnestly contended by respondents' counsel that, even if the whole question was not *res judicata* and all the alleged newly discovered evidence remained in the record to be passed upon by the court, it did not aid in construing the statutes, and could not change the result; that if competent to consider it tended in parts to support

either contention, was ambiguous, not convincing, not binding upon the corporation, and could not operate as an estoppel against it, and was an attempt to prove and establish a legal proposition by admissions, assertions, opinions, and theories of attorneys and others long since dead and not then available to explain or contradict; that, taken as a whole, it was far from convincing of relator's contention and constituted no competent evidence which should change the result or influence the court in construing the statutes under consideration.

While the court there declined to consider the matter and held the *Joy Case* controlling, as *res judicata*, it can be said that, with substantially all the testimony before it which petitioner now relies upon, the court, had it felt free to consider it, would find it yet a serious question, and encounter difficult problems in reaching a contrary opinion.

The gist of petitioner's contention, based upon newly discovered evidence, is that the Detroit, Grand Haven & Milwaukee Railway Company and its predecessors had, previous to 1884, construed Act No. 96, Laws 1859, as making the companies new corporations, independent and distinct from those previously existing and which they succeeded; that they had so declared and insisted, and had dealt with the public and conducted their business on that basis.

This contention and these proofs have been previously before this and other courts in the extensive tax litigation between the parties. The only thing new here is the manner and purpose of presenting them.

Conceding all that is claimed for this evidence, the find in Mr. Burton's collection, made in 1908, can be said to but supplement and make more clear that which was a matter of public record in 1884. Mr. Emmons, attorney of the companies for many years, is shown to have been an industrious letter writer and

briefmaker. He claimed to be the author of the railway act of 1859, and in construing it contended that, under certain foreclosure proceedings and reorganization of the companies, new corporations were created. Of his views there can be no question. He so advised the companies' officials, and they so regarded it. That position was taken by him and other attorneys of the companies in litigation in which they were involved, and the records of the courts in cases where the companies were parties show this in the pleadings and briefs filed as clearly, and with much more legal force, than the letters and private memoranda which he and other officers of the company wrote.

These public records were as available to relator in 1884, when this case was tried, as they are to petitioner now. Suggestions from the Burton find may account for a search of the Wayne county records which resulted in their discovery, but they were there then, available public records, as they are now.

If, as claimed and this petition shows, it was the consistent and persistent contention of the companies and their officials at all times, in court and out, for over 20 years, that they were new corporations, distinct from and independent of the old, which claim was substantiated by numerous public records, it was certainly no secret which it is to be assumed escaped the knowledge of able counsel preparing a case in which a contrary contention confronted them. What they knew, what they thought, why they did not produce the testimony now urged, or what respondents' defense to such evidence would have been, are all mere matters of conjecture. They are all dead now and cannot tell us.

In the passing years this railroad has conducted its business and others have done business with it on the basis of its legal existence as declared by this opinion, which has more than once been cited and relied upon by both court and counsel.

In the intervening years new conditions have arisen, and recent legislation relative to taxation of railroads has been enacted which it is claimed , makes it desirable, for the State, that this case should now be opened and the opinion reversed, on a line of proposed evidence then available in its most significant particulars, as it seems to us, but not then produced, for reasons we can only surmise, but on the surmise that it was unknown to the then attorney general and his associate. The importance to the State of the issues involved was certainly not unknown. The two exhaustive briefs then filed by the attorney general and his associate indicate that they were alive to the question of the railroad company escaping taxation under its claimed charter and that it was as prominently a matter of public interest then as now. Amongst other things, they say in their briefs, and sound the alarm, as follows:

"Repeatedly these questions have been the subject of legislative inquiry, and at almost every session of the legislature for the past 20 years or more the subject of the relations of the body of men claiming to be the Detroit, Grand Haven & Milwaukee Railway Company to the State has been referred to the committee on railways, or to a committee specially appointed to investigate the standing of this company and its legal status, and in almost every instance these committees have reported that this company had no legal existence, and have in several instances recommended that the attorney general be instructed to institute proper legal proceedings to determine the rights and liabilities of this organization, and the extent and validity of the franchises and immunities claimed and exercised by it. * * * The respondents claim to be incorporated under a special charter. If in the record before this court they have stated what this charter is, they mean that it is the charter granted in 1834 to the Detroit & Pontiac Railroad Company, with certain amendments duly accepted, so that the *de facto* corporation known as the Detroit, Grand Haven & Milwaukee Railway Company can

forever have immunity from all taxation under the general railroad laws of this State, and can forever have the corporate right to levy and collect freight charges and passenger fares unlimited by law, and can forever be above and beyond the power of the legislature to amend, alter, and repeal without the consent of the alleged corporation.

"This claim of respondents to special charter rights to avoid general law taxation leaves annually a large amount of specific taxes for the people to pay, which the alleged corporation ought to pay. The published reports of State officers leave no doubt as to the damage to the people."

This may be said to be the keynote of language used and contentions made in behalf of the State in subsequent litigation on the subject of taxation against said railroad company, and was presented to the court with equal prominence in this case when heard 30 years ago.

Knowing that the charter rights of the company had been publicly mooted and made a recurring subject of legislative inquiry for 20 years, it would seem incredible that the attorney general's department, or even the courts, of that day should be ignorant of any claims as to its legal status and charter rights made by the company in its constant dealing with the public and frequent litigation, of which public records were available.

This case was instituted to obtain an interpretation of the statutes and an adjudication of the law on that subject. The significance of what interested parties at different times claimed the law to be, though such claims were inconsistent, might not be regarded by all members of the bar as of equal importance in interpreting an enactment. We cannot assume in this application for a rehearing that such claims would be controlling. It would not be unreasonable to assume that the then attorney general, though knowing of these inconsistent claims now rediscovered and here

urged, did not regard them of serious importance in construing the legislation then before the court.

Whatever the facts may be, and as before stated it is mere conjecture, we are impelled to hold that at this late date the court would not be justified in granting a rehearing. Therefore said petition for a rehearing must be, and the same is hereby, denied.

KUHN and BIRD, JJ., did not sit.