KAVANAUGH *v.* RABIOR.

1. NAVIGABLE WATERS — GREAT LAKES — RIPARIAN OWNERS OWN ONLY TO THE MEANDER LINE—TRUSTS—STATE.

　　Riparian owners along the Great Lakes own only to the meander line, and the title to land outside the meander line, subject to the rights of navigation, is held in trust by the State for the use of its citizens.

2. SAME—TITLE TO LANDS OUTSIDE MEANDER LINE IS IN THE STATE—EJECTMENT.

　　Where the waters of Saginaw Bay receded from the meander line, leaving a strip of dry land outside, the title to said strip is in the State, and the riparian owner has no title entitling him to maintain ejectment proceedings against defendant, who is in possession also without title.

3. SAME—ADVERSE POSSESSION—TRUSTS—STATUTE OF LIMITATIONS —STATE.

　　Plaintiff's claim of title by adverse possession cannot be sustained, since, as to lands held by the State under express trust, the statute of limitations does not run.

Error to Bay; Houghton (Samuel G.), J. Submitted October 19, 1922. (Docket No. 179.) Decided March 22, 1923. Rehearing denied June 21, 1923.

Ejectment by William P. Kavanaugh against John Rabior. Judgment for plaintiff on a directed verdict. Defendant brings error. Reversed.

*Collins & Thompson,* for appellant.
*Coumans & Gaffney,* for appellee.

BIRD, J. Plaintiff is the owner in fee of all that part of lots 1 and 2, section 3, town 14 north, range 5 east, lying easterly and northerly of the right of

On ownership of beds of lakes and ponds, see, notes in 18 L. R. A. 695; 42 L. R. A. 175; L. R. A. 1916C, 150.

way of the Grand Trunk Railway Company in Bay
county.   Between these lots and the shore line of
Saginaw Bay and outside of the meander line there
lies a strip of land about 280 feet in width.   Upon
a portion of this strip defendant has built a summer
cottage and is now in possession of it.   Plaintiff
claims title thereto on two grounds:

(1) That the land is the result of accretions to his
adjacent soil.

(2) That he and his predecessors in title have oc-
cupied it for over thirty years, and that he now has
title by adverse possession.

The defendant concedes plaintiff is the owner in
fee of lots 1 and 2, and admits that he himself has
no title to the disputed strip, but he denies that the
disputed land is the result of accretions; he insists
that the strip of land is submerged land and is lake
bottom, and belongs to the State of Michigan.

1. We do not think the record supports plaintiff's
theory of accretions.   The record is very brief.   The
defendant offered no testimony.   From the testimony
we are persuaded that the disputed strip which lies
between the meander line and the present shore or
water line is, in the law, submerged land and lake
bottom.   The disputed strip has never been surveyed
and we think we may indulge the presumption that
when the meander line was established it followed the
then existing shore line.   *Brown* v. *Parker*, 127
Mich. 390.   We are encouraged in this belief by the
testimony of plaintiff and others that the water line
has materially receded in the last 30 years, and that
the height of the disputed premises and vicinity has
been raised by artificial means, by artificial fills.
Plaintiff testified:

"The water is lower than it was 20 years ago, I
imagine about 16 to 18 inches."

William McKittrick, who has spent his summers in this vicinity since 1890, testified:

"The water did come up and submerge the land around where Rabior's cottage is, in former years. We have not noticed it in recent years so much. With a stiff northeastern it blows the water up there in the neighborhood of 100 or 150 feet from the Baltimore cottage. There is a slight ridge there. The place back of him has been filled in in recent years; it was a swale formerly in there, and we underbrushed and filled it in. That was thirty years or so, and within that period of time we have frequently filled it up so that the ground between where Rabior's cottage is and the meander line is now higher because of its having been built up in that way by cottagers down there so that it would be higher, and we would avoid some of the water."

It further appeared from the testimony of this witness that the Rabior cottage did not interfere with the ingress or egress to and from the water.

Henry Thompson, a civil engineer, who has been familiar with the *locus in quo* for many years, said:

"I know that the property where Mr. Rabior's cottage is located has been overflowed at times, in years gone by, and I know it is overflowed from the northeast wind. * * *

"I do not want to say that the water does not come back on this land and cover the land outside of the meander line, but it does not get up as high as it did 30 years ago, because the level of the lakes is lower. There has not been any material difference in the winds and the velocity and force of them in the last 30 years, that I know of."

We think a fair inference is, from the meager testimony, that the disputed strip was submerged when the meander line was established, and that the disputed strip is the result of the recession of the waters and not of accretions. If this be true, the disputed area must be regarded in the law as lake bottom. When the meander line was established it

fixed the status of the disputed strip as lake bottom, and this status in the law would not change even though a portion of it had become dry land. While it is generally held that the title to lands under rivers and inland lakes belongs to the riparian proprietors, a different rule has been made with reference to the Great Lakes. The Great Lakes have been classed with tide waters, and the same rules applied. *People* v. *Silberwood,* 110 Mich. 103 (32 L. R. A. 694); *Ainsworth* v. *Hunting & Fishing Club,* 159 Mich. 61.

In the last case cited it was said:

"It is the established law of this State that riparian owners along the Great Lakes own only to the meander line, and that title, outside this meander line, subject to the rights of navigation, is held in trust by the State for the use of its citizens" (citing authorities).

The Wisconsin court has reached the same conclusion. *Diedrich* v. *Railway Co.,* 42 Wis. 248 (24 Am. Rep. 399).

In *Illinois Cent. R. Co.* v. *Illinois,* 146 U. S. 387 (13 Sup. Ct. 110), will be found a very learned and exhaustive opinion on this question by Mr. Justice Field, and he therein reaches the conclusion that the States bordering on the Great Lakes own the title of the land in trust which is covered by their waters.

2. Counsel assert plaintiff has title to the disputed strip by adverse possession. This question was raised and settled adversely to plaintiff's contention in *State* v. *Venice of America Land Co.,* 160 Mich. 680. It was there said by Mr. Justice STONE, who wrote the opinion, that:

"An exhaustive discussion of the nature of the State's title to land beneath the waters of the Great Lakes, and of the question whether any part of such territory can be acquired, as against the State, by adverse possession, will be found in the minority opinion of Justice HOOKER in the last above case (*State* v. *Fishing & Shooting Club,* 127 Mich. 580).

It there clearly appears from an abundance of authority that title to submerged lands in the Great Lakes held by the State cannot be devested by adverse possession; it being held in trust for the public, according to the original cession from Virginia and the ordinance of 1787. The late case of *Illinois Steel Co.* v. *Billot*, 109 Wis. 418 (84 N. W. 855, 85 N. W. 402, 83 Am. St. Rep. 905), supports this view. *Olds* v. *Commissioner of State Land Office*, 150 Mich. 134; *Ainsworth* v. *Hunting & Fishing Club*, 159 Mich. 61.

"The questions of water line and estoppel are answered by the above authorities.

"The trust in the State is an express trust; and the rule is too well settled to need citation of authorities that, as against the State as the trustee of an express trust, the statute of limitations will not run. 1 Cyc. p. 1113, and cases cited."

It might not be amiss to call attention to the fact that the State has of recent years established a policy in dealing with this class of lands. Act No. 326, Pub. Acts 1913, as amended (1 Comp. Laws 1915, § 606 *et seq.*).

Our conclusion is that plaintiff has failed to establish his title, and that the motion which defendant made, for a directed verdict, should have been granted.

The judgment will be reversed, and a new trial granted, with costs to the defendant.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, SHARPE, and STEERE, JJ., concurred. MOORE, J., did not sit.