JOHNSON *v.* FISCHER.

1. COURTS—CHANGE IN INTERPRETATION OF APPLICABLE LAW—RECONSIDERATION OF DENIAL OF REHEARING.

Fact that subsequent to decision by the Supreme Court on appeal in a case there was a change in the interpretation by such Court of the law applicable did not entitle losing party to reopen the controversy, since there must be an end to litigation, even though the decision may result in an apparent hardship.

2. COSTS—CHANGE IN INTERPRETATION OF LAW.

No costs are allowed either party on denial of motion for reconsideration of denial of motion for rehearing, where, subsequent to denial of the rehearing, there has been a change in the interpretation by the Supreme Court of the law applicable.

BOYLES, J., dissenting.

Appeal from Kent; Hoffius (Cornelius), J. Motion for reconsideration of denial of rehearing submitted October 10, 1950. (Calendar Nos. 40,618, 40,619.) Decided May 14, 1951.

Judgments .for the plaintiffs were reversed in 292 Mich 78. Following decision in *Bostrom* v. *Jennings,* 326 Mich 146, plaintiffs moved for reconsideration of order denying rehearing. Reconsideration denied.

*Allaben, Wiarda, Hayes & Hewitt,* for plaintiffs.

*Linsey, Shivel, Phelps & Vander Wal,* for defendants.

BOYLES, J. (*dissenting*). This is a motion by plaintiffs to set aside an order of this Court denying them a rehearing in *Johnson* v. *Fischer,* 292 Mich 78, decided in 1940. In that case the Court held that the plaintiff Nettie W. Johnson was engaged in a joint venture or enterprise with the defendant Mae Fischer, and therefore neither of the plaintiffs could recover damages resulting from the negligence of said defendant Mae Fischer in the operation of an automobile while plaintiff Nettie Johnson and said defendant Mae Fischer were on a fishing and recreation trip. Plaintiff John E. Johnson, the husband of Nettie Johnson, was not on the trip. Said plaintiffs had brought separate suits for damages alleged to have been caused by the negligence of said defendant Mae Fischer in driving the automobile at the time of the accident. Each plaintiff recovered a separate judgment, both of which this Court set aside on appeal. Without referring ·to each judgment separately, the Court concluded as follows:

"It is clear these parties (Nettie W. Johnson and Mae Fischer) did not sustain to each other at the time of the injury the relation of passenger and carrier for hire. It is equally clear plaintiff was not a guest passenger of defendant Mae Fischer any more than defendant was a guest of plaintiff Nettie W. Johnson. * * * Under the undisputed evidence,

*the parties were engaged in a joint venture or enterprise and plaintiffs may not recover."*

The plaintiffs timely filed a motion in this Court for a rehearing, which was denied. They have now filed the instant motion to set aside the order entered April 1, 1940, denying their motion for a rehearing, on the ground that the Court has now overruled that decision by *Bostrom* v. *Jennings,* 326 Mich 146, decided in 1949.

Mere lapse of time does not stand in the way of a rehearing. No time limit has been set, either by statute or by Court Rule, within which the Court may overrule or reverse a prior decision. In *Attorney General* v. *Joy,* 181 Mich 266, the Court considered on the merits and decided a petition, in the nature of a bill of review, for a rehearing of a case decided nearly 30 years previously. Subsequent to that decision, the remedy by bill of review was abolished, and superseded by motion for rehearing. In *Fries* v. *Wonnacott* (1935), 270 Mich 86, the Court said:

"Under Court Rule No 48, § 4 (1933),* the remedy by bill of review was abolished and superseded by motion for rehearing. Plaintiffs are not entitled to rehearing on their own motion, as such motion was not made within 4 months from the entry of the decree. The trial court, however, may grant a rehearing *sua sponte* after the 4 months have elapsed upon a showing that plaintiffs are about to lose their rights in their homestead by forfeiture and without judicial sale, that no rights of third parties have intervened, that there is no question of public policy, that provision has been made to pay defendants the entire amount due them, together with interest and costs, and that the denial of relief under the circum-

* See Court Rule No 48, § 4 (1945).—Reporter.

stances would result in such a harsh forfeiture as to severely shock the conscience of the court."

*Staub* v. *Tripp,* 253 Mich 633, is not only decisive of the Court's power to reconsider an order denying a rehearing, but equally indicative of the action the Court should take on a like motion to reconsider our denial of a rehearing in *Johnson* v. *Fischer,* now before us. On rehearing, the Court said:

"The original opinion herein is reported in 248 Mich 45; and is in accord with the earlier decisions in the so-called *Kavanaugh Cases.* See *Kavanaugh* v. *Rabior,* 222 Mich 68, and *Kavanaugh* v. *Baird,* 241 Mich 240. These decisions have now been overruled by *Hilt* v. *Weber,* 252 Mich 198 (71 ALR 1238) ; and consistent administration of justice clearly necessitates a reversal of our former decision herein unless such action is foreclosed for reasons presented on this rehearing by appellee."

The Court overruled its earlier decision, concluding as follows:

"A holding to the contrary, in view of our decision in *Hilt* v. *Weber, supra,* would result in a total failure of justice in the instant case."

The *Staub Case, supra,* arose out of the decision of the Court in *Hilt* v. *Weber,* 252 Mich 198 (71 ALR 1238), reversing its decisions in both of the *Kavanaugh Cases,* the first one of which (*Kavanaugh* v. *Rabior,* 222 Mich 68) had been decided nearly 8 years before. In *Kavanaugh* v. *Baird,* 253 Mich 631, the Court, in reversing its former decision in the second one of the *Kavanaugh Decisions,* said:

"Following the decision in *Hilt* v. *Weber,* 252 Mich 198 (71 ALR 1238), this Court of its own motion ordered a rehearing herein. The facts and issues are so fully presented in the original opinion that there is no occasion for detailing them again. The

decision as originally rendered in the *Kavanaugh Case* was overruled by the *Hilt Case.* In the orderly administration of justice this necessitates the Court now holding that the plaintiff herein is entitled to a decree quieting the title in him to the relicted land involved as prayed in his bill of complaint. A decree may be taken accordingly, but without costs."

The rule as to *stare decisis* settled by the Court in *Hilt* v. *Weber, supra,* applies with equal force to the motion now before us. In that case, the Court said (p 223):

"The doctrine of *stare decisis* has been invoked. The point has much force. Titles should be secure and property rights stable. Because a judicial decision may apply to past as well as to future titles and conveyances, a change in a rule of property is to be avoided where fairly possible. But where it clearly appears that a decision, especially a recent one, was wrong and continuing injustice results from it, the duty of the Court to correct the error is plain. The *Kavanaugh Cases* were decided in the recent years in 1923 and 1928, respectively. They enumerated principles at variance with settled authority in this State and elsewhere, under which real estate transactions long had been conducted and given legal effect by courts and citizens, and, themselves, disregarded the doctrine of *stare decisis* by overruling the *Warner Case,** decided in 1898. The rules they stated are not as old as the rules they abrogated. When to that are added the considerations that they operated to take the title of private persons to land and transfer it to the State, without just compensation, and the rules here announced do no more than return to the private owners the land which is theirs, the doctrine of *stare decisis* must give way to the duty to no longer perpetuate error and injustice."

Plaintiffs insist that they are entitled to a rehearing, inasmuch as the adverse decision in their case has now been overruled by the *Bostrom Case.* In

---

* *People* v. *Warner,* 116 Mich 228.—REPORTER.

that case, Carl D. Bostrom, in his own right and as administrator of the estate of Clara B. Bostrom, his deceased wife, had sued Jennings in one action to recover damages for himself and also for the estate of his deceased wife, resulting from the alleged negligence of Jennings while driving Bostrom's automobile in Illinois. On that trip, Bostrom, a minister, and his wife were going to Iowa to visit a church where the minister was expecting a call. Jennings was riding in the Bostrom automobile as far as a certain college in Illinois to see about enrolling as a student, and was to ride back to Michigan with the Bostroms when they returned. He was to drive the automobile part of the time; and while doing so the accident occurred which gave rise to the suit. On the crucial issue of whether the relationship of joint enterprise, or principal-and-agent relationship, existed between the parties, the controlling opinion of the Court said:

"Assume, however, that the question of whether a joint-enterprise, principal-and-agent, relationship existed between the parties is properly before us. This question relates to the right of action, the substantive rights of the parties, and is governed by Illinois law. Citation of Michigan cases as to what does or does not constitute a joint enterprise is, therefore, to no purpose when applicable Illinois law has been announced by its courts. * * * The declaration in the instant case discloses a joint enterprise within the meaning of the decision in *Brooks v. Snyder*, 302 Ill App 432 (24 NE2d 55)."

Consequently, there seems to be no room for doubt but that this Court has held, in both the *Johnson* and *Bostrom Cases*, that the parties in each case were engaged in a joint adventure or principal-and-agent relationship. Thereupon, the Court, referring to the question whether the negligence of the agent-driver

is to be imputed to his principal, in the *Bostrom Case* continued as follows:

"It follows that cases applying the so-called joint-enterprise doctrine of imputed negligence are equally in point whether we conclude that the relationship between the parties was that of joint enterprise or ordinary agency. In either event, we are confronted with the question of whether the negligence of the agent-driver, imputable to his principal, the owner-passenger, in actions by or against third parties, is likewise to be imputed to him in this, his suit against his agent. Was the trial court correct in holding that the acknowledged relationship between the parties bars plaintiff's right to recover?

"What is the Illinois law applicable to this question?"

After citing and discussing certain Illinois decisions on that question, the Court said:

"We are unable to discover that the courts of Illinois have definitely passed on the question before us. The laws of one State do not, of their own force, have effect beyond the limits of that State. The doctrine that all matters relating to the right of action in tort cases are governed by the *lex loci delicti* depends on comity. When the tort upon which suit is brought in this State occurred in another State and the cause of action arises out of a statute of that State, we have said that, in the absence of the construction of such statute by the courts of that State, we will construe it as we would a like statute of this State. *Edison* v. *Keene, supra* (262 Mich 611); *Perkins* v. *Great Central Transport Corp., supra* (262 Mich 616). Comparably, when a tort action brought in this State is governed by the common or unwritten law of another State and the latter has not been declared by its courts of last resort with absolute certainty, we determine the rights of the parties according to the *lex fori.* 14 Am Jur, Courts, § 88. * * *

"Were the question one of first impression in Michigan, we should examine with interest the decisions of other States which disclose the general rule existing in the country, outside of Michigan, that in actions between members of a joint enterprise the negligence of the defendant member is not imputed to the plaintiff member to bar the latter's right to recover against the former. For list of cases from other States see annotations in 62 ALR 442 *et seq.,* and 85 ALR 632, 633. The question has been decided in this State, however. contrary to that general rule, in *Hopkins* v. *Golden,* 281 Mich 389."

Thereupon, after discussing *Hopkins* v. *Golden,* 281 Mich 389; *Farthing* v. *Hepinstall,* 243 Mich 380; *Hanser* v. *Youngs,* 212 Mich 508; *Frisorger* v. *Shepse,* 251 Mich 121; *Johnson* v. *Fischer,* 292 Mich 78; and *Bushie* v. *Johnson,* 296 Mich 8, the Court concluded as follows:

"We, therefore, hold that the negligence of an agent is not imputable to his principal nor that of a member of a joint enterprise to his fellow member in an action by the latter against the former. The contrary rule, given effect but not considered, in *Hopkins* v. *Golden, supra; Frisorger* v. *Shepse, supra;* and *Johnson* v. *Fischer, supra,* and referred to in *Bushie* v. *Johnson, supra,* is overruled."

In the case now before us on a motion for a rehearing, the facts stated in the motion and supporting affidavit stand undenied. No property rights or rules affecting other persons are involved. Both of the plaintiffs and both of the defendants are living, in Grand Rapids. The insurance company covering the liability of the defendants for the automobile accident is still in business in Michigan, with an office in Grand Rapids. The attorneys who tried the case for both parties are still in the law practice in Grand Rapids. In fact, the attorneys for both the plaintiffs and defendants in the original case now

appear for their respective clients on the motion now before us. There has been no delay or lack of diligence in their seeking a review of the former decision. Within a few months after the Court's decision in the *Bostrom Case,* counsel for the plaintiffs in *Johnson* v. *Fischer* filed the instant motion for reconsideration. They would not have been justified in filing the motion before the decision in the *Bostrom Case.* Until overruled by the *Bostrom Decision,* the law announced by the Court in the *Johnson Case* was the law of the State. That principle was recognized by the Court in *Bricker* v. *Green,* 313 Mich 218 (163 ALR 697), in overruling previous decisions governing imputed negligence under certain circumstances. The Court expressly limited the application of the decision to pending and future cases. That was not done in the *Bostrom Case* overruling the principles as to imputed negligence in joint adventure cases laid down in the *Johnson Case* and similar decisions, and thus the door was left open for plaintiffs to now move for a reconsideration of that decision.

In the *Johnson Case,* the Court, in reaching its conclusion, cited and relied upon the several decisions of this Court which have now been overruled by the *Bostrom Case.* In the *Johnson Case,* the Court set aside separate judgments for Nettie Johnson and for her husband and denied recovery to both of them, without a new trial as to either of them. On the contrary, in the *Bostrom Case,* this Court reversed the order of the trial court whereby it had denied Bostrom, both individually and on behalf of his wife's estate, any right of recovery, and remanded the cause to the trial court to permit the bringing of separate actions against the defendant. In that respect, the result of the *Bostrom Case* is directly opposite that reached in the *Johnson Case.*

In the *Johnson Case,* now brought before us on this motion to set aside our order denying the plaintiffs a rehearing, all that plaintiffs now ask of the Court is that they be granted a rehearing and an opportunity to present to the Court their claim that the Court should now decide their case in accord with its decision in the *Bostrom Case.* It has now been admitted by the Court in the *Bostrom Case* that the Court made a mistake in *Johnson* v. *Fischer* in denying one or both of the plaintiffs the right to recover damages. The opportunity to right the mistake is here offered, there appears to be no intervening rights to consider, and the rehearing should be granted. "A holding to the contrary * * * would result in a total failure of justice in the instant case." *Staub* v. *Tripp, supra.*

In order that there may be no misundertanding, this opinion does not propose to set aside the doctrine of *res judicata,* or to suggest that there should be a universal impermanence of judicial decisions. But I do not adhere to the doctrine that a rehearing of a case where an injustice may have been done should be limited to cases where it will be of material benefit to the general public, as in the relicted land cases, *supra.*

Nor do I propose that we should rehear all joint enterprise cases in which the element of imputed negligence is involved. As I have already pointed out, in *Bricker* v. *Green,* 313 Mich 218 (163 ALR 697), *supra,* wherein we overruled previous decisions governing imputed negligence *under some circumstances,* this Court expressly limited the application of the decision to pending and future cases. I also have pointed out that this was not done in the *Bostrom Case* and that the door was therefore left open for plaintiffs to now move for a reconsideration. In the instant case, the only question now before us is whether we will grant a rehearing. Whatever rule

we are to apply, and the extent to which it shall be
limited, if any, does not belong here in an opinion
where we are now only considering the question
whether a rehearing should be granted. If it is
granted, the extent to which our decision in *Bricker*
v. *Green* shall be made to apply *to either one or both*
of the plaintiffs in the instant case would necessarily
then be considered and decided by this Court. In
that connection, it is necessary to again point out
that in the *Johnson Case* where we are now consider-
ing whether to grant a rehearing, there are two plain-
tiffs, one of whom, Nettie W. Johnson, was obviously
engaged in a joint enterprise with the defendant,
but the other plaintiff, her husband John E. Johnson,
admittedly was not. Does imputed negligence apply
to him? It should further be noted that in the in-
stant case both plaintiffs had judgment in the circuit
court and that the judgments as to both of the plain-
tiffs were reversed by this Court on the ground that
said *plaintiffs* could not recover because engaged in
a joint enterprise.

If, upon a rehearing, we adhere to our former de-
cision, neither plaintiff will recover. On the con-
trary, if on a rehearing we conclude that as a matter
of law the principle of imputed negligence in a joint
enterprise case bars one or the other of said plain-
tiffs from recovery, our decision setting aside the
judgment as to that one might again be affirmed,
without setting aside the judgment as to the other
plaintiff. Other grounds for reversal were express-
ly not passed upon by this Court in the opinion in
that case, and could now be considered only on a re-
hearing if granted by this Court.

It has been suggested that we should not grant a
rehearing in this case because we have adopted an
opposite policy in *Bricker* v. *Green* (1946), 313
Mich 218 (163 ALR 697). But in that case we ex-
pressly limited its application to the then-pending

and future cases. And in so doing, we expressly recognized a contrary policy as to rehearings in earlier cases, such as the case at bar, by quoting (p 235) with apparent approval the statement of Mr. Justice Cardozo in his book, "The Nature of the Judicial Process," concluding as follows:

"If judges have woefully misinterpreted the *mores* of their day, or if the *mores* of their day are no longer those of ours, they ought not to tie, in helpless submission, the hands of their successors."

Under the circumstances of this case, a rehearing should be granted, with costs to abide the final result as to either one or both of said plaintiffs.

BUSHNELL, J. I do not concur in the opinion of Mr. Justice BOYLES for granting a rehearing. This Court adopted an opposite policy in *Bricker* v. *Green*, 313 Mich 218 (163 ALR 697).

In *Travis County* v. *King Iron Bridge & Manfg. Co.* (1899; CCA5th), 92 F 690 (certiorari denied in 1899), 174 US 801 (19 S Ct 887, 43 L ed 1187) the court said that, even if it had the power to issue a writ of certiorari as an original process to review a cause, it would not issue the writ, saying:

"We can well understand that the petitioner regrets that it cannot enjoy the benefits of the later decision of the supreme court of Texas. This alleged reversal of the former State jurisprudence may appear to work a hardship on the petitioner. But the speedy ending of litigation has always been considered to be a matter of great public importance. It concerns not only suitors, but those who may derive rights from them. '*Interest reipublicae ut sit finis litium.*' Practically, a suit would never be finally terminated if, as contended by the petitioner, it were true that a change in the interpretation of the law applicable to a cause prosecuted to judgment entitled the party who had been cast in the suit by rea-

son of the prior interpretation to reopen the controversy. * * * But if the petitioner's contention were correct in principle, it would seem to be immaterial whether the lapse of time were of long or short duration, and that such a petition as the one now before us could be urged successfully at any time. * * * It is evident that it is far better, in the general interest, that there should be a few cases of apparent hardship, such as the one presented, resulting from a change of jurisprudence, than that litigation should never end."

The petition for rehearing is denied, but without costs to either party.

REID, C. J., and NORTH, DETHMERS, BUTZEL, CARR, and SHARPE, JJ., concurred with BUSHNELL, J.