PEOPLE *v.* DeMEERLEER.

1. CRIMINAL LAW—ASSISTANCE OF COUNSEL—PLEA.

The constitutional right of one accused of crime to have counsel for his defense does not mean he shall have counsel at public expense nor, as of right, to have counsel assigned by the court to advise him relative to his plea but is merely a guaranty of right to employ and have counsel (Const. 1908, art. 2, § 19).

2. SAME—ASSISTANCE OF COUNSEL—PUBLIC EXPENSE—PLEA.

The statute allowing one accused of crime to be heard by counsel is only declaratory of his constitutional right to have counsel for his defense and is on a par with the right to produce witnesses and proofs in his favor but does not mean the accused shall have counsel at public expense, the statute as to such employment being permissive and then only upon a showing of inability of the accused to employ counsel and, as a rule, after plea (Const. 1908, art. 2, § 19; 3 Comp. Laws 1929, §§ 17129, 17486).

3. HOMICIDE—MURDER—EVIDENCE—SENTENCE.

In prosecution for murder wherein it appears that appellant and another drove into a gasoline filling station where the attendant filled their car, they procured pop and candy bars, did not pay for anything, killed the attendant and drove away, that court first rejected appellant's plea of guilty to murder in the second degree and then convicted him of murder in the first degree and sentenced him to life imprisonment after receiving a voluntary plea of guilty to charge of murder, such sentence was not error (Act No. 328, §§ 316, 317, Pub. Acts 1931).

4. SAME—CONSTITUTIONAL LAW—MURDER.

One who was clearly proved guilty of murder while participating in a robbery, who first attempted to plead guilty of murder in the second degree but after its rejection by the court voluntarily pleaded guilty to charge of murder, and was sentenced to life imprisonment, was not thereby denied any constitutional right of representation, a public trial, or orderly and due process of law (Const. 1908, art. 2, §§ 16, 19).

5. SAME—ROBBERY—MURDER—EVIDENCE—DELAYED MOTION FOR NEW TRIAL.

 A homicide committed during the course of a robbery is murder
 and where such appears to have been clearly proved, motion
 for leave to file a delayed motion for a new trial was prop-
 erly denied (Act No. 328, § 316, Pub. Acts 1931).

Appeal from Lenawee; Rathbun (G. Arthur), J. Submitted October 11, 1945. (Docket No. 80, Calendar No. 43,045.) Decided March 4, 1946. Rehearing denied May 13, 1946. Reversed on certiorari to Supreme Court of Michigan by Supreme Court of the United States February 3, 1947.

Rene DeMeerleer was convicted of murder. Affirmed.

*Beauchamp, Potter & Louisell,* for appellant.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara,* Assistant Attorney General, for the people.

BUSHNELL, J. In 1932 defendant Rene DeMeerleer and one Virgil Scott were charged with murder. DeMeerleer attempted to plead guilty to murder in the second degree.* The court informed him that a qualified plea could not be accepted. The record then shows the following:

*"The Court:* * * * Mr. DeMeerleer, * * * if you wish to qualify your plea as to your guilt, the court not being willing to accept it, he would enter a plea of not guilty and ask you to stand trial. With that information, from the Court, do you still want to qualify your plea?

*"Mr. DeMeerleer:* Just want to know whether I am guilty or not.

---

* See Act No. 328, § 317, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115-317, Stat. Ann. § 28.548).—REPORTER.

"*The Court:* Want to know whether you are guilty or not. You know whether you were in this deal or not.

"*Mr. DeMeerleer:* Yes.

"*The Court:* You say guilty?

"*Spectator in the Audience:* Don't say guilty, my boy. He could never commit anything. One dead. He is a good citizen, never committed a crime, 17 years of age, good boy, never did anything. He didn't come—

"*The Court* (interrupting): Understand, the court feels sorry for parents when their children get in any trouble. I will talk with you later about it. If you will have a chair. I will talk with you later about it. Gentlemen, there are other counsel waiting in other matters. I believe it would be fair to them for this hearing to be held this afternoon. Would it be convenient for you?

"*Mr. Bird:* I could be able to arrange for this afternoon.

"*The Court:* Come in at 1:30 on that?

"*Mr. Bird:* Yes, I don't know how this plea—

"*The Court:* (interrupting) He said he would plead guilty on the information. That's what I understood you to say?

"*Mr. Bird:* He still qualified his plea.

"*The Court:* You said you plead guilty. Is that correct?

"*Mr. DeMeerleer:* Yes.

"*The Court:* He has. That's correct.

"*Mr. Bird:* The people are ready for the hearing in the case.

"*The Court:* Come back at 1:30.

"(Afternoon session: 2:00 p. m.)

"*The Court:* Gentlemen, are you ready with the proofs to determine the degree?

"*Mr. Bird:* We are ready."

The people then called three eyewitnesses, each testifying, in substance, that Scott and DeMeerleer drove into a gas station, where the attendant filled

their car; they then secured some pop and candy bars and, without paying for the gasoline or candy, shot the attendant, Brown, and drove away. Brown died a few minutes thereafter. The sheriff of Lenawee county testified regarding statements taken from both men. Following the testimony the trial judge had a private interview in his office with each defendant and, upon their return to the courtroom, the record shows the following:

"Virgil Scott and Rene DeMeerleer, on your plea of guilty you stand before this court convicted of murder. I have talked with you in my office. You have talked with me. Before I pass sentence, is there anything more other than what you have already said that you wish to say to me?

"*Mr. DeMeerleer:* No, sir, your Honor.

"(Mr. Scott shook his head.)    *    *    *

"Now, I come to my sentence. The sentence of this court is, Mr. Virgil Scott and Mr. Rene DeMeerleer, these words apply equally to each of you—shall be and remain confined in the Michigan Branch State Prison at Marquette, Michigan, in solitary confinement and at hard labor for the rest of your natural lives."

Neither Scott nor DeMeerleer were represented by counsel, nor did they request the court to permit them to confer with counsel, or have counsel appointed for them.

In November of 1944, DeMeerleer, in his own person, filed a motion, "asking leave to file a delayed motion to withdraw his plea of guilty and for an order to vacate the judgment and sentence, permitting of a new trial." The trial judge filed a written opinion on November 24, 1944, and denied this motion.

On February 1, 1945, defendant, through counsel, filed another motion "for leave to file a delayed

motion for a new trial." The record shows that on
February 5, 1945, counsel appeared and argued this
motion. The colloquy between court and counsel is
shown, concluding with this statement by the trial
judge: "I am satisfied with that former opinion
(meaning on DeMeerleer's previous motion) to-
gether with the remarks I have made this morning."
Included in the remarks referred to is the following:

"*The Court* (interrupting): If our Supreme
Court wants to let cold-blooded murderers free, they
are going to do it. I am not going to do it.
"*Mr. Louisell:* I didn't ask this court to let cold-
blooded murderers free.
"*The Court:* I never had anybody before me that
was more completely a cold-blooded murderer than
this fellow. The man was arraigned with a fellow
by the name of Virgil Scott. Virgil Scott was driv-
ing the car, and didn't have the gun, didn't shoot.
Wouldn't it be a travesty on justice to grant this
fellow a new trial, who shot the gun, and say to
Virgil Scott, 'You stay in prison the rest of your
life.' Is there anything any crazier than that?"

We granted defendant's application for leave to
appeal from the sentence entered on May 16, 1932,
in which application DeMeerleer asserted the follow-
ing grounds and reasons for appeal:

"1.  That the court erred in its opinion order of
February 5, 1945, denying defendant-appellant's
motion for leave to file delayed motion for new trial
and new trial.
"2.  That the court erred in sentencing defendant-
appellant on May 16, 1932, without there having
been a free and voluntary plea of guilty entered or
the defendant convicted of the charge alleged in the
information.
"3.  That the court erred in sentencing defendant-
appellant on May 16, 1932, where the court had ef-
fectively denied defendant his right to a public trial

by an impartial jury and assistance of counsel, all as guaranteed defendant under article 14 of the United States Constitution and sections 12, 13, and 19 of article 2 of the Michigan Constitution (1908)."

In appellant's brief the following questions are proposed:

"1.    Did the trial court err in denying defendant-appellant's motion for leave to file delayed motion for new trial?

"2.    Did the trial court err when it sentenced defendant on the theory that the defendant had pleaded guilty to murder?

"3.    Had the defendant-appellant freely and voluntarily pleaded guilty to the charge of murder at the time the court sentenced him to life imprisonment?

"4.    Was defendant-appellant denied at the time of sentence and prior thereto his constitutional right to representation by counsel, a public trial and orderly and due process of law?"

It should be noted that at no stage of the proceedings from 1932 to the present time has DeMeerleer denied the killing of Brown.

We are mindful of the expressions of the supreme court of the United States in the recent case of *Hawk* v. *Olson,* decided November 13, 1945, 326 U. S. 271 (66 Sup. Ct. 116, 90 L. Ed. 61), and the authorities therein cited. However, as stated in *People* v. *Williams,* 225 Mich. 133, 137:

"An accused is not entitled, as of right, to have counsel assigned by the court to advise him relative to his plea. The State Constitution (1908), art. 2, § 19, secures to an accused the right 'to have counsel for his defense.' This does not mean he shall have counsel at public expense. It is a guaranty of right to employ and have counsel; a right not always recognized in early English criminal cases. Section

15623, 3 Comp. Laws 1915 (3 Comp. Laws 1929, § 17129 [Stat. Ann. § 28.854]), also allows an accused to be heard by counsel. This is only declaratory of the right secured to an accused by the provision mentioned in the Constitution, and is on a par with the right to produce witnesses and proofs in his favor, but does not mean he shall have counsel at public expense. Section 15912, 3 Comp. Laws 1915 (3 Comp. Laws 1929, § 17486 [Stat. Ann. § 28.1253]), permits the court to appoint an attorney at public expense to conduct the defense of an accused when he is unable to procure counsel. This statute is permissive; its provisions require a showing of inability of an accused to procure counsel, and, as a rule, to which, of course, there may be exceptions, cannot be invoked by an accused until after plea and not at all under a plea of guilty. The record discloses no application by defendants for counsel during the period their pleas of not guilty stood, or at any other time, and there is no merit in the claim that counsel should have been appointed to represent them.''

The writer of the present opinion expressed his views at length in a dissenting opinion in *People* v. *Crandell,* 270 Mich. 124, 130. Having done so, he now considers himself bound by the court's views of the matter as expressed in the opinion prepared by Mr. Justice WIEST, in which the rule in *People* v. *Williams, supra,* was followed. The same rule was again applied in *People* v. *Fries,* 294 Mich. 382, and *People* v. *Kotek,* 306 Mich. 408, certiorari denied, 323 U. S. 790 (65 Sup. Ct. 312, 89 L. Ed. 630), and *People* v. *John Haddad,* 306 Mich. 556, *People* v. *Merhige,* 212 Mich. 601, are distinguishable on their facts and circumstances.

Our examination of the record requires the conclusion that DeMeerleer freely and voluntarily pleaded guilty to the charge of murder at the time

the court sentenced him to life imprisonment, and, therefore, the court did not err in such sentence.[*] Nor was he denied any constitutional right of representation, a public trial, or orderly and due process of law.[†]

There can be no doubt from the testimony produced prior to sentence that DeMeerleer was guilty of the crime of murder, because of. a homicide committed during the perpetration of a robbery. *People v. Crandell, supra.* Therefore, the court did not err in denying defendant's motion for leave to file a delayed motion for a new trial.

The judgment and sentence are affirmed.

BUTZEL, C. J., and CARR, SHARPE, BOYLES, REID, NORTH, and STARR, JJ., concurred.