VALENTINI *v.* CITY OF ADRIAN.

MUNICIPAL CORPORATIONS—SEWER CONSTRUCTION CONTRACT—QUICK-SAND—EXCESSIVE SUBSOIL WATER CONDITIONS.

Judgment for $115,741.15 for plaintiff sewer contractor for additional cost of sewer construction because of defendant city's known, but withheld, information as to quicksand and excessive subsoil water conditions, is affirmed.

Appeal from Lenawee; Martin (Rex B.), J. Submitted June 7, 1956. (Docket No. 36, Calendar No. 46,605.) Decided December 28, 1956. Rehearing denied May 17, 1957.

Case by Rudolph A. Valentini against the City of Adrian, a municipal corporation, for damages

sustained in construction of sewer due to improper information given inducing contract bid. Cross declaration by city claiming damages for delay and nonperformance of contract. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Baldwin & Walker* and *Rollin D. Shull,* for plaintiff and cross defendant.

*Miller, Canfield, Paddock & Stone* and *Edward N. Mack,* for defendant and cross plaintiff.

*Amici Curiae:*

City of Detroit, by *Paul T. Dwyer,* Corporation Counsel, and *Helen Miller Smith,* Assistant Corporation Counsel.

City of Bay City, by *Bernard S. Frasik.*

BOYLES, J. In this case the plaintiff, a sewer contractor, brought suit against the defendant city for damages claimed to have been caused by the excessive cost of constructing a sewer for the city, on account of the city's having misrepresented the character of subsoil conditions, known to the defendant city, namely, quicksand and excessive water. Plaintiff claimed this resulted in his low construction bid for the project and that the unexpected subsoil conditions caused delay, and greatly increased the cost of constructing the sewer. The defendant city filed a cross claim for damages claimed by it to have resulted from plaintiff's delay, for failure to entirely complete the project; and for the anticipated cost to the city of completing the project.

Issues were joined, considerable testimony taken before a jury, and the court submitted the respective claims of the parties to the jury under appropriate

instructions, to decide the disputed questions of fact. The jury returned a verdict for the plaintiff in the sum of $115,741.15, but did not announce any verdict on the cross claim of the city. However, we may assume that the jury, in rendering its verdict of $115,-741.15 for the plaintiff, followed the instruction of the court in that regard, concerning which neither party claims error. The court had charged the jury:

"Now briefly, in summary, you should    *    *    * first determine whether or not the plaintiff is entitled to any damages on his declaration, and if so, how much.

"You should next determine whether or not defendant is entitled to any damages on its claim for damages, and if so, how much.

"Either of these determinations may come out to a figure of zero or nothing. After making these 2 determinations you should subtract the 2 figures, even though 1 figure may be a zero, and allow to the party suffering the most damages, if any, the amount of the difference, if any.    *    *    *

"If you find that neither party is entitled to damages, you will return and announce to the court, your foreman or forewoman speaking, 'We find no cause of action for either party.'"

The defendant city (cross plaintiff) has appealed from the judgment entered for the plaintiff.

Previous to 1950 the city had employed consulting engineers and obtained a master plan for a municipal sewer system. A part of the plan was the construction of an addition to the sewer system of about 8,-600 feet across what is known as the Sunnyside area, terminating at the city disposal plant. There had previously been 2 sewers built in this area.

In 1950 the city solicited bids for the construction of said additional sewer across the Sunnyside area. The plaintiff obtained from the city's consulting engineers and examined a copy of the proposed plans

and specifications and spent some time examining the job, but did not make borings or otherwise examine subsoil conditions. The city's proposed plans and specifications which were on file included the following statements:

"*Construction Conditions.* It is required that each bidder will examine the drawings and specifications for this work and make a personal examination of the site of the proposed work and its surroundings. * * *

"*Subsoil Conditions.* Borings have been made and logs thereof are recorded on the drawings.* This information is offered to the bidder merely as evidence and the bidder himself must assume entire responsibility for any conclusions which he may draw from it."

Plaintiff's bid was accepted, and a formal contract was executed. Thereafter, in constructing the sewer, the plaintiff encountered unusual quantities of quicksand and excessive subsoil water conditions which had not been shown on the plans and specifications on file for the sewer, as exhibited by the city; information as to which, although known to it, had been withheld by the city.

The plaintiff encountered some quicksand in about 1,500 feet of the length of the entire job, which finally prevented the usual construction methods, and finally caused the parties to agree to make additional borings to determine the extent of the quicksand area. It led to an agreement to change part of the route, thereby attempting to by-pass the unfavorable subsoil conditions, which, however, was not entirely successful.

The subsoil quicksand and excessive water conditions which seriously hampered the plaintiff's building the sewer had been known to the city for

---

* The drawings did not show quicksand or excessive water conditions in the subsoil.

several years, having been disclosed by borings in connection with previous sewer projects in this area, for the knowledge of the unfavorable quicksand and water conditions was shown to be in the city's possession through records previously made by borings made by the engineer employed by the city. The quicksand subsoil was well known to the current foreman of the public works department who had served 4 years as city commissioner of public works, from 1945 to 1949 (the instant contract was executed in 1950). He testified to previous trouble with quicksand in sewer construction in this area, and that he had known about the quicksand condition for years, in his official capacity with the city.

It was not necessary that the borings should conform to the exact route of the proposed sewer, or be at all times at the same depth. They were, however, in the area to be traversed by the proposed sewer, and some of them were on the proposed route. The fact that the exact route which plaintiff was to follow was changed, during construction, by agreement of both parties, thereby attempting to by-pass the unfavorable subsoil conditions encountered on the route, indicates that these conditions were recognized by both parties as a hazard to the construction.

The withholding by the city of its knowledge of the known conditions, resulting in excessive cost of construction, forms an actionable basis for plaintiff's claim for damages. Nor does the requirement that the contractor examine the specifications and make a personal examination of the site bar the plaintiff from recovering damages caused by the undisclosed subsoil conditions.

The testimony fairly establishes that the city, through its consulting engineers, had knowledge of the unfavorable subsoil conditions; that these conditions were not made known to the plaintiff; that as a result of encountering these unfavorable subsoil

conditions of quicksand and excessive water, plaintiff's construction of the sewer was delayed and resulted in the greatly increased costs of construction for which the plaintiff claims damages. The evidence supports the jury's conclusions to that effect, and the verdict was not contrary to the great weight of the evidence.

The principal claim of the defendant city (appellant) for reversal is that the city's withholding of information as to the quicksand and unfavorable subsoil conditions does not constitute an actionable misrepresentation of facts, as a matter of law. In that connection, the appellant relies largely on the following provisions in the city's advertisement and proposal for bids, which were included in the contract itself, and which, for emphasis, are here repeated:

"*Construction Conditions.* It is required that each bidder will examine the drawings and specifications for this work and make a personal examination of the site of the proposed work and its surroundings. * * *

"*Subsoil Conditions.* Borings have been made and logs thereof are recorded on the drawings. This information is offered to the bidder merely as evidence and the bidder himself must assume entire responsibility for any conclusions which he may draw from it."

In *Hersey Gravel Co.* v. *State Highway Department,* 305 Mich 333 (173 ALR 302), the plaintiff highway construction contractor filed in the State court of claims a claim against the State highway department for damages resulting from a claimed breach of contract for construction of a State highway in Baraga county. Before making a bid for the job, the plaintiff obtained plans and specifications from the highway department. The blueprints contained notations of soil conditions made as the result

of investigations conducted by the district soils engineer of the department, by digging test holes and taking soundings. The plaintiff encountered subsoil conditions (rock), not shown, or disclosed to the plaintiff, although known to the department. The rock conditions resulted in an increased cost of construction. As in the case at bar, the State relied on a provision in the blueprints, supplemented by the specifications, which said:

"Soil notations shown on the plans are for information only and shall not be construed to relieve bidders of their responsibility to satisfy themselves by examining the site of the proposed work as to the actual soil conditions."

In the *Hersey Case* the plaintiff contractor had judgment in the court of claims, which was affirmed by a majority opinion of this Court, from which we quote as follows (pp 340, 341):

"This provision put plaintiff on notice, but the notations on the plans had the effect of also advising plaintiff that an investigation had been made by the highway department of the character of the soil along the entire proposed highway. The testimony shows that this investigation extended over a considerable period of time. * * * Plaintiff complied with the requirements of the proposal and carried out the responsibility to satisfy itself as to actual soil conditions by the examination of its manager of the site of the proposed work.

" 'Undoubtedly the commission's knowledge of subsoil conditions was superior to that of the plaintiffs, and they tried to acquire this knowledge from it. It is equally true that these facts were not within the fair reasonable reach of the plaintiffs, and there was lack of time for them to obtain this information by an independent investigation before the letting. * * *

" 'The duty rested on the sewer commission to furnish to the plaintiffs in this case all the material

information it had in its possession, obtained either by borings or from past experience, as to subsoil conditions in the sewer line, and if it failed to do so, and as a result thereof the plaintiffs were put to large additional expense in completing the contract, they are entitled to recover the reasonable damages sustained by them.' *Davis* v. *Commissioners of Sewerage,* 13 F Supp 672, 681.

"In *United States* v. *Atlantic Dredging Company, supra* [253 US 1, 11 (40 S Ct 423, 64 L ed 735)], the court said:

"'The case is, therefore, within the ruling of *United States* v. *Spearin,* 248 US 132, 136 (39 S Ct 59, 63 L ed 166, 169), where it is stated that the direction to contractors to visit the site and inform themselves of the actual conditions of a proposed undertaking will not relieve from defects in the plans and specifications, citing *Christie* v. *United States,* 237 US 234 (35 S Ct 565, 59 L ed 933); *Hollerbach* v. *United States,* 233 US 165 (34 S Ct 553, 58 L ed 898); and *United States* v. *Utah, N. & C. Stage Co.,* 199 US 414, 424 (26 S Ct 69, 50 L ed 251, 255).' "

Three members of the Court, including the writer of this opinion, dissented, saying (p 344):

"Plaintiff did examine the site of the proposed work as to actual soil conditions. There is no sound basis in law for plaintiff's present claim that it was misled by the plans. In the absence of fraud, deceit, by agreement by someone authorized to make the change, the written agreement controls. Plaintiff cannot now recover for unanticipated soil conditions."

However, it must be conceded that the principal effect of a minority dissenting opinion (if it has any effect) is to indicate what is *not* the law of the case. It is quoted here for that purpose, as not being controlling of decision, in the case at bar.

A similar situation came before the Court in *W. H. Knapp Co.* v. *State Highway Department,* 311 Mich 186. The plaintiff highway construction contractor filed a claim against the State highway department for extra work in the construction of highway grading and drainage structures in Chippewa and Mackinac counties. As in the *Hersey Gravel Case,* and also the case at bar, bids were sought for construction of the public improvement. The plans which constituted part of the proposal for the bids contained the following:

"Bidders shall carefully examine the proposal, plans, specifications and supplemental specifications and inspect the site of the proposed work in order to satisfy themselves, by examination, as to all local conditions affecting the contract.

"SOIL NOTATIONS

"Soil notations shown on the plans are for information only and shall not be considered to relieve bidders of the responsibility to satisfy themselves, by examining the site of the proposed work, as to the actual soil conditions."

As in the case at bar, the plaintiff contractor made a trip to the site of the project and spent some time examining it as to actual conditions, observed pits made by employees of the State highway department to ascertain subsoil conditions, and noted the bottom of those pits. After the State had examined the route and made borings or pits, this information as to subsoil conditions had been placed in the office of the State highway department, but it was not made known to the bidder or set forth in the specifications. During the construction of the work the plaintiff found the subsoil conditions more difficult and more expensive than represented, and filed its claim in the court of claims for damages, for the excess in cost of construction. Judgment for plaintiff in the court of claims was affirmed on appeal by a

majority opinion of this Court, relying on the *Hersey Gravel Case.* The opinion said (pp 199–201):

"It seems to us clear that there was a material encountered by the contractor in the several cuts on this job in great quantity that was far more difficult to handle than material which could properly be called loam or sand. The words employed by the engineers for the State in making up the specifications did not reveal to plaintiff nor would they reveal to the mind of the ordinary contractor in preparing his bid or signing a contract that so much material so difficult to remove would be encountered. We can heartily commend the engineers for their willingness to make a good bargain for the State, but their duty called upon them to set forth in the specifications descriptive language which would not mislead a bidder. Mr. Knapp for plaintiff company was misled by the specifications.

"The trial court relied upon the majority opinion in the *Hersey Case, supra.* That opinion is controlling in the instant case as to the duty of the State in preparing its specifications and resulting liability where the contractor was misled. Most of the issues involved in that case are similar to the issues in the instant case. * * *

"We quote the following from the opinion of the trial court:

" 'The court concludes that the State highway department had information at hand relative to the nature and composition of the subsoil which it neglected to furnish the bidders upon this project; and that the information supplied was of such a nature that only a highly trained expert in soil engineering would have placed the interpretation thereon that defendant claims it was entitled to. The court finds it was the clear legal duty of the department to furnish all the available information on this subject in a form and in a manner that would apprise the prospective bidders of the nature of the difficulties to be encountered and in terms that would

be readily understood by the average road contractor. Under the record I find that it has not done this and that claimant is entitled to an award of damages.' "

Justice North wrote a dissenting opinion, with which Justice Wiest and this writer concurred. It said (pp 202–204):

"I cannot agree in affirmance of the judgment entered in the court of claims. Were it not for the serious consequences which follow, some of which are hereinafter noted, I would be disposed to acquiesce in the conclusion reached by Mr. Justice Reid on the ground that this case is controlled by the majority opinion in *Hersey Gravel Co. v. State Highway Department,* 305 Mich 333. The factual background, at least in a general way, and the law issues involved are the same in the instant case as those before the Court in the *Hersey Gravel Company Case.* But I have an abiding conviction that the result reached by the majority of the Court in the *Hersey Gravel Case* was erroneous; and notwithstanding the dissenting opinion of Chief Justice Boyles in that case is quite applicable to the instant case, I am constrained to add the following. * * *

"The standard specifications contain the following:

" 'Bidders shall carefully examine the proposal, plans, specifications and supplemental specifications *and inspect the site of the proposed work in order to satisfy themselves, by examination, as to all local conditions affecting the contract.'*

"Further, there plainly appears upon the plans which constituted the basis of plaintiff's bid the following:

" 'Soil Notations

" 'Soil notations shown on the plans are for information only and shall not be considered to relieve bidders of the responsibility to satisfy themselves, by examining the site of the proposed work, as to the actual soil conditions.'

"Plaintiff's claim of right to recover is upon the theory that it was misled by the notations on the plans as to soil conditions, and it would have the Court shut its eyes to the above-quoted provision embodied in the same plans. Such a position is wholly untenable.

"Not only was plaintiff as a prospective bidder on this project warned by the above-quoted provision in the plans which were the basis of its bid, but obviously it knew that it was burdened with ascertaining soil conditions through its own efforts as the result of which it actually made a personal investigation of such conditions prior to submitting its bid. If under the circumstances of this case the State is not protected by the terms of the contract, the obvious result is that the State is deprived of its right to make a contract of this character which is binding upon the opposite party thereto. And further, it deprives the State of the benefit of seeking competitive bids for such undertakings, if it is to be held that the lowest bidder, having eliminated the other bidders and having obtained the contract, can be relieved of his contract obligation in the event that unanticipated difficult conditions are encountered."

However, as stated before, a minority dissenting opinion merely serves the purpose of indicating what the law is *not*. While said dissenting opinion seems to be in line with the claims of the appellant city in the instant case, the Court has rejected it. Unless and until a decision of the Court, represented by the majority, is overruled, it must be conceded that the result of a dissenting opinion must be to establish individual opinion, but not the law of the case. It is the duty of members of the Court to adhere to the decisions of the Court until overruled; and it matters not what a dissenting opinion was, or might still be, to a dissenting member of the Court. It does not control.

"Fact that subsequent to decision by the Supreme Court on appeal in a case there was a change in the interpretation by such Court of the law applicable did not entitle losing party to reopen the controversy, since there must be an end to litigation, even though the decision may result in an apparent hardship.' *Johnson* v. *Fischer* (syllabus), 330 Mich 491.

"It is evident that it is far better, in the general interest, that there should be a few cases of apparent hardship, such as the one presented, resulting from a change of jurisprudence, than that litigation should never end." *Id.* p 503.

Consequently, I adhere to the majority opinions of the Court in *Hersey Gravel Co.* v. *State Highway Department, supra;* and *W. H. Knapp Co.* v. *State Highway Department, supra.* As to that, the situation now here parallels that confronting Justice BUSHNELL in *People* v. *DeMeerleer,* 313 Mich 548, where he wrote the opinion for the Court, and where the Justice wrote (p 554):

"The writer of the present opinion expressed his views at length in a dissenting opinion in *People* v. *Crandell,* 270 Mich 124, 130. Having done so, he now considers himself bound by the Court's views of the matter as expressed in the opinion prepared by Mr. Justice WIEST, in which the rule in *People* v. *Williams,* 225 Mich 133 was followed."*

We have examined the lengthy record in connection with appellant's other grounds for reversal. As to the verdict being excessive, there was testimony, including that from the defendant city in support of its cross claim, from which the jury might reasonably arrive at the amount of the verdict which

---

* However, it should be noted that the viewpoint originally expressed by Justice BUSHNELL in the *Crandell Case,* to which he referred in writing the *DeMeerleer* opinion, finally prevailed when the United States supreme court, on certiorari, reversed the decision of this Court in *DeMeerleer* v. *Michigan,* 329 US 663 (67 S Ct 596, 91 L ed 584).

it rendered for the plaintiff. It was within the range of the proofs, and not excessive. The court does not usually substitute its judgment for that of the jury as to the amount of the verdict, unless the verdict was arrived at by improper means or shocks the conscience of the Court.

The cross declaration filed by the city claimed damages on the ground that the plaintiff contractor had failed to complete his contract, and that as a result the city was, or would be, compelled to expend sums of money to complete the job in compliance with the contract. The plaintiff-cross defendant claimed that his failure, if any, was due to the city's breach of its contract and its refusal to allow the plaintiff to permit the contractor to complete the work. Issues of fact were raised, much testimony received, and the plaintiff's claim properly presented to the jury by the court in instructing the jury. The verdict shown by the record merely finds for the plaintiff and announces the amount. No objection was made to the form of the verdict or its failure to announce as to the defendant city's cross claim. The questions of fact, including whether the collapse of a part of the sewer was due to quicksand, and the fault of the city, were properly submitted to the jury. We find no reversible error on which to set aside the result. The testimony was ample to support the verdict, it was not against the great of the evidence, and is affirmed.

DETHMERS, C. J., and SHARPE, KELLY, and CARR, JJ., concurred in the result.

EDWARDS, J. (*concurring in result*). In concurring with Mr. Justice BOYLES' result, this opinion will express concern for the particular fears which gave rise to his dissents in the *Hersey* and *Knapp Cases*. (*Hersey* v. *State Highway Department,* 305 Mich

333 [173 ALR 302]; *W. H. Knapp Co.* v. *State Highway Department*, 311 Mich 186.)

This Court should not create a situation where contractors bidding on public works do so with one eye on the job and one on the courts.

Plaintiff Valentini prevailed in the court below by proving to the satisfaction of a jury that he had suffered damage to the extent of $115,741.15 as a result of the city of Adrian's violations of certain implied warranties which this Court has previously held to be made as a matter of law by public bodies when they solicit competitive bids on public works. The 2 essential implied warranties appear to be, first, that the material information furnished by the public body, and relied upon by the successful bidder, be true (at least to the extent of the public body's knowledge); and, second, that it represents all the material knowledge possessed by the public body at the time the bidding documents are prepared which knowledge would have an important bearing upon the execution of the contract.

In the instant case the plaintiff proved only one relevant item pertaining to inaccuracies in the plans and specifications submitted by defendant city of Adrian to bidders on the proposed sewer contract. Significantly, however, that inaccuracy appears to be the omission of the words "water—December 12, 1924" at a depth of 3 feet on a certain boring "P" which went to a total depth of 17-1/2 feet. The record indicates that this boring was the closest one to the area in which plaintiff ran into subsurface water and quicksand which proved disastrous to his sewer building efforts.

Aside from the testimony referred to above, plaintiff's case is founded mainly upon proving that the defendant city of Adrian violated its implied warranty of disclosure of all material knowledge which

it then had which was essential to the proper bidding of this sewer contract.

If the statutory requirement for the public bidding of public works imposed upon municipalities (CL 1948, § 123.204 [Stat Ann 1949 Rev § 5.2704]) is to have any value the doctrine laid down in the *Hersey* and *Knapp Cases,* previously discussed by my Brother, must be somewhat narrowly construed. Michigan has already gone beyond the general rule in most jurisdictions as stated in ALR:

"The general rule may be deduced from the decisions that where plans or specifications lead a public contractor reasonably to believe that conditions indicated therein exist, and may be relied upon in making his bid, he will be entitled to compensation for extra work or expense made necessary by conditions being other than as so represented." 76 ALR 269.

We should not extend the present Michigan rule to allow a successful low bidder to transform his fixed-price bid into a cost-plus contract by the simple expedient of proving that conditions which he encountered below the surface of the ground had been there all along and that somebody at some time knew of them or had reason to suspect their existence. The knowledge which the city was required to disclose was knowledge which it presently had through information or records in possession of its officials or agents.

In the writer's view, in 2 instances the trial judge received in evidence testimony which, if its receipt is approved here, would extend the implied warranty to the dangerous degree described above. All of the testimony of Ernest Hengst, pertaining to the knowledge he derived while employed by some forgotten contractor in digging a sewer in 1908 in the general area of the current dispute, is inadmissible under the

view just stated. His testimony was extremely remote both as to time and place and unrelated to any present general knowledge in the community. Asked, for example, whether the sewer he worked on was still there, Mr. Hengst replied, "I don't know. I haven't been there this afternoon. I haven't been there for about 47 years." Mr. Hengst was never an employee of the city of Adrian and his testimony that unnamed city of Adrian officials viewed the 1908 sewer digging does not serve to charge present day city of Adrian with Mr. Hengst's recollections of his 1908 experience. Nor does his testimony identifying a now deceased commissioner of public works as having been on the scene, serve this purpose. The objections to Mr. Hengst's testimony should have been sustained.

Similar objections were made to the testimony of Alden D. Pifer. Mr. Pifer, however, was a former city employee and he testified that he operated a sewer-digging machine on the 1924 sewer project in this same general vicinity under the orders of the then commissioner of public works. Under these circumstances it was within the discretion of the trial court to admit his testimony as to what he did and saw in the performance of his duties as a city employee in relation to the 1924 sewer, particularly since city records of this job showing quicksand were in the hands of the engineers who designed the sewer under litigation. It was hardly permissible, however, over proper objection, to allow Mr. Pifer to give hearsay testimony as to the statements pertaining to quicksand which the then, and now deceased, commissioner of public works made to him.

The most damaging testimony to defendant's case is that of Freeman Ansted who was subpoenaed by the plaintiff under the statute. At the time of his

testimony he was employed as foreman of the public works department of the city of Adrian, had served as commissioner thereof from 1945 to 1949 (the plans and specifications for this job were prepared in 1950), and was described as the number 1 employee on the seniority list of the department. This witness' testimony contained the following:

"When I was commissioner I had some difficulty with the one sewer in that area. I had a cave-in. The tile tipped in the quicksand and the earth washed down in and I had to fix it of course.  *  *  *  I went down to look things over. When I got down there there was a hole washed in the ground about 25 feet. It was an oak tree right down in the bottom of the hole. Took the tree right down. We went to fix it. We found the tile had tipped in quicksand and standing on end. That was the 54-inch tile. That was the big sewer."

This record contains, as my Brother has noted, ample evidence from which the jury could have found that the city of Adrian had knowledge of subsurface water and quicksand in the immediate vicinity of the proposed sewer at the time of advertising for bids and that the plans and specifications actually furnished were misleading. The writer considers the admission of the Hengst testimony and the portion of the Pifer testimony referred to as error, but under the total record not such error as would be prejudicial or likely to alter the result.

My Brother has referred at some length to his views on the function of the dissenting opinion. In this regard the writer prefers Chief Justice Charles Evans Hughes' view:

"A dissent in a court of last resort is an appeal to the brooding spirit of the law, to the intelligence of a future day, when a later decision may possibly correct the error into which the dissenting judge

believes the court to have been betrayed." Hughes, The Supreme Court of the United States (1928), p 68.

For the reasons stated I concur in Mr. Justice Boyles' result.

Smith, J., concurred with Edwards, J.

Black, J., took no part in the decision of this case.