KENSINGTON CORPORATION v DEPARTMENT OF STATE
HIGHWAYS

1. ACTION—PARTIES—CONTRACTORS—SUBCONTRACTORS—LIABILITY TO
   SUBCONTRACTORS.

   A prime contractor on a state construction project may maintain
   a suit on behalf of a subcontractor where the prime contractor
   has reimbursed the subcontractor for damages for added ex-
   penses incurred in the project as a result of misinformation
   supplied by the state or where the prime contractor remains
   liable for such reimbursement in the future.

2. ACTION—PARTIES—CONTRACTORS—SUBCONTRACTORS—ACTION
   AGAINST GOVERNMENT—LIABILITY TO SUBCONTRACTOR.

   Suit against the government by a prime contractor on behalf of a
   subcontractor will generally be permitted in the absence of
   clear, express exculpatory contractual language showing the
   prime contractor is not liable to the subcontractor, and the
   burden is on the governmental defendant to show that the
   prime contractor is absolved from liability to the subcontractor.

3. FRAUD—CAUSE OF ACTION—MISREPRESENTATION—FACTUAL INACCU-
   RACIES—RELIANCE.

   Factual inaccuracies in the state's plans and specifications for a
   proposed highway construction project may give rise to a cause
   of action for misrepresentation if the inaccuracies have been
   relied upon by a contractor to his detriment.

4. APPEAL AND ERROR—FINDINGS OF FACT—COURT RULES.

   Findings of fact made by the Court of Claims will not be set aside
   upon review unless clearly erroneous (GCR 1963, 517.1).

5. APPEAL AND ERROR—CONTRACTORS—SUBCONTRACTORS—MISREPRE-
   SENTATION—RELIANCE.

   A finding by the Court of Claims that a contractor and subcon-

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 13 Am Jur 2d, Building and Construction Contracts § 108 *et seq.*
[3, 5] 37 Am Jur 2d, Fraud and Deceit §§ 86, 108, 156.
[4] 5 Am Jur 2d, Appeal and Error § 839.
[6] 51 Am Jur 2d, Limitation of Actions § 398.

tractor did not rely upon a misrepresentation by the state as to soil conditions at the site of a highway construction project was erroneous where the testimony showed that test results in the possession of the state were not made available to the contractor or the subcontractor and that the subcontractor would have used an entirely different design in construction had the true character of the soil been known.

6. LIMITATION OF ACTIONS—COURT OF CLAIMS ACT—STATUTES.

The one-year statute of limitations contained in the Court of Claims Act does not bar an action brought within one year of the final denial of a plaintiff's claim by the State Highway Department's Central Office Adjustment Board (MCLA 600.6431; MSA 27A.6431).

Appeal from Court of Claims, Philip J. Glennie, J. Submitted February 8, 1977, at Lansing. (Docket No. 26382.) Decided March 29, 1977. Leave to appeal applied for.

Complaint by Kensington Corporation, E. C. Korneffel Company and ECK Equipment Company against the Department of State Highways for damages for misrepresentation resulting in added expenses on a highway construction project. E. C. Korneffel Company and ECK Equipment Company were dismissed by stipulation. Judgment for defendant. Kensington Corporation appeals. Reversed and remanded for entry of judgment upon determination of damages.

*Doyle, Whitmer & Carruthers, P. C.* (by *Steven C. Hess),* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Louis J. Caruso* and *Curtis G. Beck,* Assistants Attorney General, for defendant.

Before; D. E. HOLBROOK, P. J., and R. B. BURNS and M. F. CAVANAGH, JJ.

D. E. HOLBROOK, P. J. On July 8, 1974, the Court of Claims found no cause of action on three counts of a four-count complaint involving the alleged misrepresentation of the State Highway Department regarding the type of soil present at a bridge reconstruction site.[1] Judgment was entered on December 12, 1974, and rehearing was denied. Plaintiff Kensington appeals as of right.

On April 7, 1971, plaintiff Kensington, as low bidder, was awarded a prime contract for reconstruction of a bridge over I-94 in Dearborn, Michigan. The contract specified that Kensington, acting individually and through its subcontractors, was required to build a reinforced concrete wing wall at one end of the bridge. The defendant prepared and submitted certain plans and specifications which indicated that the soil in the wing wall area was soft blue clay, which has a transverse sheering resistance of 100 to 300 pounds per square foot. Kensington sublet the bridge construction work to Korneffel Company, a state-approved subcontractor. Construction proceeded until the cofferdam of the wing wall collapsed. Upon independent analysis of the soil, it became apparent that the soil was in fact very soft blue clay, which has a transverse sheering resistance of less than 100 pounds per square foot, and not soft blue clay. The cofferdam was successfully rebuilt using very soft blue clay methods. Kensington and its subcontractors[2] then attempted to recover approximately $55,000, the added expense incurred by the requirement of the use of very soft blue clay building methods, from the highway department. On July 17, 1972, the Central Office Adjustment Board denied the vari-

[1] The court below found in favor of plaintiffs on the fourth count, the judgment has been satisfied and apparently that finding is final.

[2] Initially the subcontractors were parties herein also, but they were dismissed by stipulation prior to trial herein.

ous claims in the final administrative step of the claim review process. The plaintiffs then filed the instant action in the Court of Claims.

The trial court found that Kensington could not maintain this action to recover damages caused by this incident. The court held that there was never a joint venture between Kensington and the subcontractors and that therefore as a matter of law, the prime contractor could not maintain this action on behalf of the subcontractors.

Both parties apparently agreed that the trial court misdirected its inquiry towards the existence of a joint venture. On appeal both parties engage in a thorough review of similar claims by contractors against the Federal government. We also agree that a review of Federal court experience, where a substantial amount of litigation in this area has occurred, is helpful. Both parties cite the same case as support for their respective positions, *J L Simmons Co, Inc v United States,* 304 F2d 886 (Ct Cl, 1962). We also agree that this, and subsequent cases following this case, control and that the rule is that the contractor may maintain a suit on behalf of the subcontractors when the prime contractor has reimbursed its subcontractors for the damages or remains liable for such reimbursement in the future (known as the Severin Doctrine, *Severin v United States,* 99 Ct Cl 435 [1943], *cert den* 322 US 733; 64 S Ct 1045; 88 L Ed 1567 [1944]), *J L Simmons Co, supra, Hegeman-Harris & Co, Inc v United States,* 440 F2d 1009 (Ct Cl, 1971), *Keydata Corp v United States,* 504 F2d 1115 (Ct Cl, 1974).[3] Apparently Kensington has not reim-

---

[3] *See, also, Arkansas Bridge Co v Kelly-Atkinson Construction Co,* 282 F 802 (CA 8, 1922); Anno. *Validity, construction, and application of "no damage" clause with respect to delay in construction contract,* 10 ALR2d 801 (1950); 65 Am Jur 2d, Public Works and Contracts, § 164, pp 43–44.

bursed the subcontractors and, therefore, this dispute really concerns whether Kensington remains liable for such reimbursement in the future. The key to this dispute, therefore, lies in interpretation of the subcontract itself, which the trial court avoided herein by improperly ruling that the contractor could not maintain this action because Kensington and the subcontractors herein were not engaged in a joint venture. Unfortunately, this case does not fit neatly within the *Simmons* rule, and the subcontract language does not clearly require a particular result. The liability of the prime contractor to the subcontractor depends on proper interpretation of this subcontract. See, *Blount Brothers Construction Co v United States,* 346 F2d 962 (Ct Cl, 1965).

This subcontract was not interpreted by the trial court although there was testimony presented concerning the meaning of the subcontract. The subcontract herein provides in pertinent part as follows:

"3. Prime contractor to remit payment for completed work when received and evidenced by estimates prepared by the Michigan State Highway Department.

* * *

"9. The Party of the Second Part agrees to accept as complete and final, amounts and quantities as determined by the Michigan State Highway Department and the Party of the Second Part shall have no further claim against the Party of the First Part whatsoever. Payment will be made to the Second Party as the Michigan State Highway Department pays the Party of the First Part."

These sections when read with the rest of the subcontract, do not absolve plaintiff Kensington of all responsibility or liability to the subcontractors,

but rather serve to create an implied obligation on the part of the prime contractor to proceed against the government in administrative and judicial proceedings should the state fail to pay without good cause. *Keydata Corp, supra,* at 1121. Federal courts have clearly announced that: "To come under the 'Severin' doctrine the defendant must show, through some contractual term or a release, that the plaintiff-prime is not liable to the subcontractor". *Blount Brothers Construction Co, supra,* at 965. In the absence of clear, express exculpatory language, suit by the prime contractor in behalf of a subcontractor against the government will generally be permitted. *Southern Construction Co, Inc v United States,* 364 F2d 439, 447 (Ct Cl, 1966). We rule that the burden is properly on the defendant to show that the prime contractor is absolved from liability, particularly when, as here, there is no question but that recovery will properly go to the injured subcontractor.[4] Defendant has not carried its burden of proof.

Furthermore, we think this is the just result. Contrary to the court below, as explained further by us in the next issue, we feel the prime contractor and subcontractor herein properly relied on defendant's misrepresentations as to the soil quality, which caused the collapse of the cofferdam. To deny recovery on the basis that the subcontractor did not directly deal with the state when the state voluntarily and knowingly provided the incorrect and material information to the subcontractor would be unfair. This is particularly so when the subcontractor has not given up his rights against

---

[4] Section 3 and Section 9, quoted in this opinion, of the subcontract would appear to require payment of any such sums paid by the state to the subcontractor. In addition, Kensington admitted such liability at trial herein.

the prime contractor, nor signed a release, and when the contract supports a finding of an obligation on the part of the prime contractor to protect the subcontractor from wrongful action by the state.

We must take cognizance of the realities of government contracts. The state provides plans and specifications for the project and exerts substantial control over bidding procedure. The prime and subcontractors must meet many requirements imposed by the state and Federal governments. In the instant case, the contract and subcontract are set forth on State Highway Commission forms. The contract between the prime contractor and the state lists the proposed subcontract provisions and includes the subcontractor's name and signature as a "prequalified" subcontractor. The state provided a copy of the proposed plans to the sub. The contractor is responsible to the state for the work of the subcontractor and must furnish appropriate performance and lien bonds. If the subcontractor should fail in its performance, the state may well be able to maintain an action against both prime and subcontractors, or at least if the state sued the prime, the prime in turn could join the sub, GCR 1963, 204. The state should not then be able to preclude the prime from bringing an action on behalf of the injured sub. We rule that in a normal case the prime contractor may bring an action on behalf of the sub who is injured by actions of the state contractee.

We do not consider what the result would be were there a clear exemption from liability for the prime contractor to the subcontractor for actions of the state. It would seem at first glance that since the prime contractor was not liable to the subcontractor, the prime then could not sue on

behalf of the sub.[5] However, we then reach the strange result that the state would be shielded from suit for its wrongful actions by way of a contract provision between the prime and the subcontractor. Furthermore, such a clause would be void as against public policy, particularly if such a provision were standardized in contracts between prime and subcontractors who do government work. See, *Cree Coaches, Inc v Panel Suppliers, Inc,* 23 Mich App 67; 178 NW2d 101 (1970), *aff'd* 384 Mich 646; 186 NW2d 335 (1971). The threat of direct or indirect pressure on contractors to include such a provision would soon materialize. See *Mahoney v Lincoln Brick Co,* 304 Mich 694; 8 NW2d 883 (1943), *Federoff v Ewing,* 386 Mich 474; 192 NW2d 242 (1971). This is indeed a troubling area of the law. At this time we see no reason why the state should not be liable when the trial court finds that the subcontractor justifiably relied on the representation of the state. The Court of Claims improperly found no reliance on the state's erroneous representations as to the quality of the soil herein and that, therefore, no misrepresentation was committed by the state.

Factual inaccuracy in the state's plans and specifications for a proposed highway construction project may give rise to a cause of action for misrepresentation if the inaccuracies have been relied upon by a contractor to his detriment. See *Valentini v City of Adrian,* 347 Mich 530; 79 NW2d 885 (1956), *W H Knapp Co v State Highway Department,* 311 Mich 186; 18 NW2d 421 (1945), *Hersey Gravel Co v State Highway Department,* 305 Mich 333; 9 NW2d 567 (1943), and generally 65 Am Jur 2d, Public Works and Contracts, § 177, pp 58–60. No one quarrels with the existence of this rule and

---

[5] *See* Anno, 10 ALR2d 801, *supra,* n 3.

the state herein admits that it erred in its soil classifications. Furthermore, the state had an engineer on the job who knew of the true nature of the soil condition. However, the trial court improperly determined that plaintiff Kensington did not rely on this error and was not itself damaged by this fiasco.

In reviewing the Court of Claims' decision, findings of fact will not be set aside unless clearly erroneous, GCR 1963, 517.1, *Brown Brothers Equipment Co v State Highway Commission,* 51 Mich App 448; 215 NW2d 591 (1974). The trial court herein based its finding of no reliance, at least in part, on its erroneous legal conclusion that Kensington could not sue on behalf of its subcontractors. However, we have determined that this action can be maintained. The subcontractor's damages, in essence, have become the damages of the prime contractor and a finding to the contrary would be error.

A review of the record in the instant case certainly justifies a finding of reliance on the part of the subcontractor herein. In preparing its bid to Kensington, Korneffel's president testified that if the company had known that the soil was very soft instead of soft clay, its bid would have been substantially higher. In addition, Kensington, the prime contractor, also bid in on this project and testified that its bid would also have been substantially higher had the true soil conditions been known. It certainly is reasonable to this Court for a contractor to rely on the State Highway Department's representations of soil conditions. See *Valentini, supra, W H Knapp, supra, and Hersey Gravel Co, supra.* The state freely volunteered this material and erroneous information to the subcontractor. The court herein concluded, however, that

"there is no testimony convincing this court that Korneffel Company relied on this misrepresentation in submitting a lower bid to plaintiff Kensington". The court found this in spite of the following finding of fact made by the court:        (

"Korneffel Company designed the initial cofferdam based upon its past experience and review of boring information which indicated the presence of soft blue clay which was contained in the project plans. Soft blue clay is a soil designation having an average sheer strength range of one hundred to three hundred pounds per square foot. However, the State had in its possession test results which inadvertently were not set forth on the plans. These test results showed that the soil condition range on the project was from seventy five to two hundred seventy five pounds per square foot with an average of ninty five pounds per square foot. This soil condition is classified as 'very soft blue clay'.

"The Defendant's District Engineer, Mr. Gooding, testified that he knew about this soil condition but had failed to inform the contractor.

"Korneffel, testifying for Plaintiff, claimed that he would have used an entirely different design in construction procedure had he known that he would be confronted with very soft blue clay. The engineers, Korneffel, Dr. Lamb, Coleman and Gooding [Coleman and Gooding testified for defendant] all testified that they certainly would be alerted by the words 'very soft blue clay' and would have advised a contractor accordingly had they known of it."

The preponderance of the evidence, indeed the only evidence, indicates that Korneffel, and to a lesser extent Kensington, relied on the inaccurate soil classification in submitting their respective bids and in constructing the cofferdam which collapsed. We rule that the trial court erred in finding that there was no reliance on the State's

misrepresentations as to the quality of the soil herein.

The trial court in its initial opinion also held that this claim was barred by the statute of limitations contained in the Court of Claims Act, MCLA 600.6431; MSA 27A.6431. In the rehearing opinion the Court of Claims seemed to indicate that it had committed error initially in holding that this statute precluded the instant action. In the instant case the Central Office Adjustment Board did not finally deny plaintiffs' claim until July 17, 1972. The plaintiffs then filed this claim on December 1, 1972. This claim was properly brought within the one-year period. *The Cooke Contracting Co v Department of State Highways #1 (On Rehearing),* 55 Mich App 336; 222 NW2d 231 (1974).

Reversed and remanded for entry of judgment and proper determination of damages.