### EARL L. REAMER COMPANY v CITY OF SWARTZ CREEK

#### OPINION OF THE COURT

1. CONTRACTS—STATES—CONTRACTORS—RELIANCE—MISSTATEMENT OF CONDITIONS.

    A construction contractor may rely on the construction contract, plans and specifications prepared by the state and the state is liable for misstating existing conditions; the state must furnish all available information in a form and manner that would apprise prospective bidders of the nature of difficulties to be encountered.

2. APPEAL AND ERROR—FINDINGS OF TRIAL COURT—COURT RULES.

    The findings of a trial court sitting without a jury may not be set aside unless found to be clearly erroneous (GCR 1963, 517.1).

3. MUNICIPAL CORPORATIONS—CONTRACTORS—SEWER CONTRACT—LIABILITY FOR WITHHOLDING INFORMATION.

    A trial court erred in finding no liability on the part of a city toward a sewer contractor which brought an action for recovery of additional costs incurred in the installation of a sewer system because of underground structures where the evidence clearly shows that employees of the city who were involved in the sewer project possessed material information regarding underground structures which was not given to the plaintiff before it bid on the project.

#### CONCURRENCE BY BEASLEY, J.

4. CONTRACTS—CONTRACTORS—MATTERS OF PUBLIC RECORD—DISCLOSURE OF INFORMATION.

    *A public construction contractor should be held to finding out for itself matters of public record so that it may not be encouraged to convert a fixed-price contract to a cost-plus contract by the*

REFERENCES FOR POINTS IN HEADNOTES

[1] 13 Am Jur 2d, Building and Construction Contracts § 106.

[2] 76 Am Jur 2d, Trial § 1250 *et seq.*

[3] 13 Am Jur 2d, Building and Construction Contracts § 106.

[4] 13 Am Jur 2d, Building and Construction Contracts § 106.

*device of claiming that the public body did not disclose informa-tion to it prior to its bidding for the contract.*

Appeal from Genesee, Thomas C. Yeotis, J. Submitted February 3, 1977, at Lansing. (Docket No. 22132.) Decided June 8, 1977.

Complaint by Earl L. Reamer Company against the City of Swartz Creek for recovery of the difference between the bid price and actual cost of construction of a sewer system. Third-party complaint by the City of Swartz Creek against Carl H. Carlson for indemnification. Complaints dismissed. Earl L. Reamer Company appeals. Reversed in part, and remanded.

*Marvin L. Failer,* for plaintiff.

*Edward P. Joseph,* for the City of Swartz Creek.

Before: D. C. RILEY, P. J., and T. M. BURNS and BEASLEY, JJ.

PER CURIAM. Plaintiff Earl L. Reamer Company sought to recover $350,000 representing the difference between its bid price and the actual cost of constructing a sewage system for defendant City of Swartz Creek. Reamer alleged that the plans and specifications upon which it based its bid did not disclose the existence of underground structures known to the city and its agents, that plaintiff was put to much greater expense because of such structures, and that the city's engineer, third-party defendant Carlson, negligently failed to disclose the existence of the structures in preparing the bid plans and specifications. The city countered with the arguments that plaintiff had breached the contract by not performing in a workmanlike manner, that plaintiff had agreed to continue perform-

ance after discovering the underground structures and that plaintiff had been paid for all authorized extra work. The city also counterclaimed for $350,-000 for the costs of clean up, inspection and completion of the system. The city filed a third-party complaint against its engineer, Carl Carlson, for indemnification.

After a lengthy trial the court rendered a judgment dismissing plaintiff's complaint for failure to prove its claim, dismissing the third-party complaint, and awarding the city $12,638.76. Plaintiff appeals.

Plaintiff states, as issues on appeal, five questions of fact with which the trial court was faced. The issue we must answer, however, is whether the trial court's finding that plaintiff failed to prove that the city had or should have had actual knowledge of the undisclosed underground structures is clearly erroneous.

The city hired Carl Carlson to prepare plans and specifications for the sewer construction project and to act as engineer on the project. In so doing, Carlson assumed that the homes in the older section of the city were served by septic tanks. They were in fact piping effluent from their septic tanks into storm drains.

Under the construction contract plaintiff Reamer was to bear all losses due to the nature of the ground being different than expected and it was required to replace any disturbed sewer or drain without receiving extra compensation therefor.

Under standards for the preparation of plans, adopted by the Michigan Public Health Department, plans for new sewer systems must show the location, size and direction of flow of all existing sewers draining to the treatment works concerned.

Also required to be shown in the plans are all known existing structures both above and below ground which might interfere with the construction.

The plans prepared by Carlson showed all existing underground structures indicated on the maps possessed by the Genesee County Drain and Road Commissions, all visible structures detected by Carlson's field crew, and all structures shown on maps possessed by the city.

The plans did not show, however, the following:

1. Catch basins on Morrish Road and Second Street;

2. Existing sewers on First, Second, Third and Frederick Streets;

3. Sanitary sewers on School, Brady, Ingalls, Hayes, Ford, Crapo and Maple Streets.

The plans did not reveal the existence of from 50 to 60 house leads on several streets, as well as some storm sewers. Existing sidewalks on eight streets were not shown. The plans did not show a 12-inch sewer on Bristol Road which Carlson himself had installed for the city. Manhole cover elevations were missing from many of the plan sheets. Although the state plan standards require plans and profiles to show them, the locations of drop and sump manholes were not shown. Edge drains installed by the state highway department along Miller Road were not indicated in the plans. Bores and encasements required for main sewer lines were not indicated on the plans. Reamer encountered gas lines, telephone conduits, sanitary sewers and catch basins not shown on the plans. Specified elevations turned out to be too shallow, requiring the redoing of finished work.

Reamer began work on the project in June, 1966. Under the contract it was obligated to com-

plete the project within 500 days, by November of 1967. Reamer's last day on the job was sometime in the late fall of 1968. Some work was not completed at that time because easements had not been obtained. Testimony of various witnesses indicated that numerous changes in elevation were ordered by Carlson as the work progressed. Carlson, however, failed to make written change orders as called for in the contract. In the spring of 1969, after the county interceptor line was completed, Reamer connected the sewer system to the interceptor. The system proved operative and was approved by the county in July of 1969, after the city spent almost $13,000 in cleaning and inspecting part of the system. Much of the testimony, the arguments of the parties, and the findings of the trial court centered upon the 80-some sewer lines that ran from septic tanks to storm sewers in the older, residential section of the city. The omission of these lines from the plans is treated as the principal breach of duty by the city.

Reamer's expert witness Jerry Jarrett testified that, from his own investigation of underground structures in the city, he could tell that many houses must be connected to the sewers visibly discharging septic effluent into Swartz Creek. The city's expert, Frank Christie, conceded that if he had been the engineer on the project he would have checked the discharges at the creek since the whole purpose of the project was to eliminate them. From the constant discharge at the creek, he, too, would have known that homes were tied into the storm sewers.

It was Carlson's testimony that the preliminary report he prepared for the city in 1962 stated that the old residential area of the city was unsewered. It noted, however, that there were sanitary con-

nections to the storm sewers in the downtown area (not included in the Reamer project). Except for conferring with city manager Looney concerning the locations of the proposed lines, Carlson and his crew did not interview city officials, employees or residents in preparing the plans. Carlson did not check sewers discharging into Swartz Creek, examine effluent discharges into the creek or do any soundings to determine to what sewers the discharge pipes were connected. Carlson conceded that he designed the 12-inch sewer Reamer encountered on Bristol Road which was not shown on the plans.

City manager Looney testified that he had actual knowledge of the sewers on First, Second and Third Streets, acquired when he observed the discharges at the creek. Looney also knew of the septic outfall at the drains discharging into the creek below Fairchild and McLain Streets. When asked if it was common knowledge in Swartz Creek in 1963 that homes had septic tanks connected to storm sewers, Looney answered, "Yes". Carlson did not consult Looney in preparing the plans and Looney never told Carlson what he knew. Frank Tykoski, a city employee involved in sewer inspection and operator of the waste treatment plant, lived in the old section of the city. He knew that at least his and his neighbor's septic tanks were connected to the storm sewer. He later discovered that other residences were similarly connected. The city's expert witness, Christie, testified that while it would be difficult to locate illegal house leads, their existence would be discernible by examination of the constant septic discharge into the creek.

The case at bar is factually very similar to *Valentini v City of Adrian,* 347 Mich 530; 79

NW2d 885 (1956). In that case a sewer contractor sought recovery of the excess cost of building a sewer system for a city. The contractor claimed that the city misrepresented the nature of subsurface conditions known to its employees, namely, the existence of quicksand in the path of the sewer project. The Court stated:

"The withholding by the city of its knowledge of the known conditions, resulting in excessive cost of construction, forms an actionable basis for plaintiff's claim for damages." 347 Mich at 534.

The plaintiff in that case presented the following proof that the city had knowledge of the quicksand:

"The subsoil quicksand and excessive water conditions which seriously hampered the plaintiff's building the sewer had been known to the city for several years, having been disclosed by borings in connection with previous sewer projects in this area, for the knowledge of the unfavorable quicksand and water conditions was shown to be in the city's possession through records previously made by borings made by the engineer employed by the city. The quicksand subsoil was well known to the current foreman of the public works department who had served 4 years as city commissioner of public works, from 1945 to 1949 (the instant contract was executed in 1950). He testified to previous trouble with quicksand in sewer construction in this area, and that he had known about the quicksand condition for years, in his official capacity with the city." 347 Mich at 533–534.

In *Holloway Construction Co v State of Michigan,* 44 Mich App 508; 205 NW2d 575 (1973), we affirmed the trial court's finding that a highway contractor was entitled to rely upon the construction contract, plans and specifications prepared by

the state and that the state was liable for misstating existing conditions. We recognized the rule stated by the trial court in *W H Knapp Co v State Highway Department,* 311 Mich 186, 201; 18 NW2d 421 (1945), that it was a clear legal duty of the state to furnish all available information on the subsoil "in a form and in a manner that would apprise the prospective bidders of the nature of the difficulties to be encountered".

The findings of a trial court sitting without a jury may not be set aside unless found to be clearly erroneous. GCR 1963, 517.1. On review of the record we are convinced that the trial court's findings were clearly erroneous, as the evidence clearly preponderates in the opposite direction.

The trial court's decision appears to have rested principally on three findings:

1. That Reamer had failed to show that the city, through its agents, had any knowledge of the underground conditions;

2. That according to city manager Looney the maps only indicated the main, not the house leads, and that it was common knowledge that the houses had septic tanks;

3. That the evidence indicated that Carlson did not know the source of the sewage being emptied into the creek and that the location of lead-ins would be very difficult to discern.

Reamer in fact demonstrated that city employees—indeed, the city manager and the city's sewer inspector—had actual knowledge of many of the underground structures not revealed on the plans. Looney knew about those on First, Second and Third Streets. Tykoski knew that his and his neighbor's septic tanks were connected to the storm sewer. Carlson had actual knowledge of

structures not shown on the bid plans, including the 12-inch sewer he installed on Bristol Road.

The bid maps supplied to the plaintiff not only failed to show all house leads, but in fact failed to show the many existing sewers. Looney, in fact, testified that it was common knowledge in Swartz Creek that houses were connected to storm sewers.

In view of the testimony of the other witnesses, Carlson's purported lack of actual knowledge of the lead-ins is virtually irrelevant. It seems as though everyone but Carlson knew of the lead-ins. If Carlson had done his job in preparing the plans he couldn't have missed them. Even the city's expert witness made a tacit admission of that fact.

It is clear that employees of the City of Swartz Creek who were significantly involved in the sewer project possessed material information regarding underground structures, which information was not given to the plaintiff before it bid on the project. The city failed in its duty to disclose knowledge which it presently possessed through information known to its officials or agents.

We reverse that portion of the trial court judgment finding no liability on the part of the city. We remand for entry of judgment for plaintiff and determination of damages.

BEASLEY, J. *(concurring)*. I concur in this opinion, but add the following comments.

No oral argument was made on behalf of defendant city; I believe it might have been helpful. Like the writer of the concurring opinion in *Valentini v City of Adrian,* 347 Mich 530; 79 NW2d 885 (1956), I am concerned lest this result be interpreted as precedent for encouraging public contractors to seek to convert their fixed price contracts to a kind of cost plus fee contract by the device of claiming

the public body had information which it did not disclose to the bidder.

I would hold public contractors to find out for themselves matters of public record and limit this decision to its unusual fact situation.